**AMSOUTH BANK**

v.

**Anna CUNNINGHAM.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 16, 2005 Session.

Feb. 27, 2006.

Published Pursuant to R. 11, Tennessee Court of Appeals.

John R. Colvin, Winchester, Tennessee, and Hugh P. Garner, Chattanooga, Tennessee, for the appellant, Anna Cunningham.

Michael H. Knowlton, Cookeville, Tennessee, and Joseph F. Edwards, Algood, Tennessee, for the appellee, AmSouth Bank.

Harry S. Mattice, Jr., United States Attorney, and Pamela G. Steele, Assistant United States Attorney, for the appellee, The United States of America.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Anna Cunningham, the wife of a comatose veteran who suffered a stroke at a Veterans' Administration Medical Center in 1997, was appointed conservator of the estate and person of her husband at the inception of the conservatorship in 1997. In 2000, AmSouth Bank filed a petition to be appointed conservator of the estate of the ward, contending Mrs. Cunningham was not properly attending to the ward's financial affairs. The bank was appointed conservator of his estate to serve along with Mrs. Cunningham who would continue to serve as conservator of the person. No appeal was taken from that order. Thereafter, a power struggle between the co-conservators ensued concerning the civil action Mrs. Cunningham commenced and was maintaining in federal court on behalf of the ward and herself against the Department of Veterans' Affairs. Countervailing pleadings were filed by the co-conservators. The bank sought exclusive control over the federal litigation and Mrs. Cunningham sought to remove the bank as a conservator. Following a brief hearing, the probate court designated AmSouth as having "exclusive control" of the ward's interest in the federal litigation. Mrs. Cunningham appeals contending she was entitled to an evidentiary hearing prior to any modification of her powers as a conservator and that she was denied an evidentiary hearing on her petition to remove AmSouth. We affirm the probate court's decision to act expediently in its continuing supervision of the conservatorship based upon what it believed to be the ward's best interest; however, we remand Mrs. Cunningham's petition to remove AmSouth as a conservator, finding the record sufficient to entitle her to an appropriate hearing.

Roy Cunningham suffered multiple infarcts of the brain while a patient at the Alvin C. York Veterans' Administration Medical Center in Murfreesboro in 1997. As a result of the strokes, he was left comatose and on life support. Soon thereafter, his wife, Anna Cunningham, filed a petition in the Probate Court of Coffee

County seeking to be appointed conservator of the person and estate of her husband. She was appointed conservator of his person and estate in July of 1997.[1] As conservator of the person of her husband, Mrs. Cunningham was responsible for his day-to-day needs, which included making decisions concerning his medical care. As conservator of his estate, she was responsible for his financial affairs, his property, and claims or liabilities.

As a disabled veteran, Roy Cunningham was entitled to receive benefits from the Department of Veterans' Affairs. Payment of these benefits commenced in 1997 and continue to this day.

Believing her husband's stroke was the result of medical malpractice by persons employed by the Department at the Alvin C. York Veterans' Administration Medical Center, Mrs. Cunningham commenced a civil action in the United States District Court in January of 1999 on her husband's behalf, as his next friend and conservator, and on her behalf.

As conservator of his estate, Mrs. Cunningham was under an obligation to file annual accountings with the probate court.

Since she was receiving her husband's benefits from the Department, she was also required to file annual accountings with the Department. She failed to file accountings with the probate court and the Department. Being dissatisfied with Mrs. Cunningham's failure to file accountings and an alleged failure to cooperate, the Department requested AmSouth Bank file a petition with the probate court to be appointed guardian[2] of his estate. The bank filed a petition in December of 2000.[3] The petition was filed under Tennessee's Uniform Veterans' Guardian Act, Tenn. Code Ann. § 34–5–101 *et seq.*, because Roy Cunningham was receiving veterans' benefits.[4]

The probate court granted AmSouth's petition in December of 2000, appointed AmSouth as conservator of the estate of Roy Cunningham, and modified the powers and responsibilities of Mrs. Cunningham by removing her as conservator of her husband's estate but reaffirming her appointment as conservator of the person with responsibility for the "day to day personal needs of the ward."[5] The court

1. The conservatorship for Roy Cunningham was created in 1997 upon the petition of Mrs. Cunningham filed pursuant to the statutory scheme for conservatorships in Tenn.Code Ann. § 34–1–101 *et seq.* and § 34–3–101 *et seq.*

2. AmSouth identified itself as guardian because it was acting under Tennessee's Uniform Veterans' Guardian Act which uses the term guardian instead of conservator. Under Tennessee's general statutory scheme for guardianships and conservatorships, guardians are appointed for those individuals under eighteen years of age, and conservators are appointed for individuals eighteen years of age and older. We use the term conservator instead of guardian because the terms are synonymous and Tennessee's statutes generally use the term conservator.

3. The probate court created a new file upon the filing of AmSouth's petition, assigning it

Case No. 00–513. The original conservatorship was being supervised by the probate court under Case No. 97–268, the number assigned when Mrs. Cunningham filed her petition. (The first two numbers of each represent the year in which the petition was filed.)

4. The Uniform Veterans' Guardianship Law provides that the Administrator of Veterans' Affairs of the United States shall be a party in interest in any proceeding for the appointment or removal of a guardian of a ward whose assets are derived in whole or in part from benefits paid by the Veterans' Administration. Tenn.Code Ann. § 34–5–103.

5. Tennessee's statutory scheme for conservatorships for adult disabled persons who are not receiving benefits from the Veterans' Department is substantially similar and compatible with the Uniform Veterans' Guardianship

also directed that they "work together to ensure that the ward's needs are met."

Thereafter, Mrs. Cunningham filed a written response in opposition to AmSouth's petition and appointment in March of 2001 and requested a hearing. The record indicates the next hearing occurred in October of 2001, following which the probate court issued an order reconfirming the appointment of AmSouth as "financial guardian" for Mr. Cunningham and Mrs. Cunningham as "the guardian of the person." The court additionally instructed Mrs. Cunningham and AmSouth to work together in the best interest of Roy Cunningham (hereinafter the ward).

Following a period of conflict concerning the best interest of the ward as it pertained to the federal litigation, AmSouth filed a petition in March of 2004 requesting the probate court enter an order making AmSouth responsible for all litigation on behalf of the ward. This prompted a flurry of activity from Mrs. Cunningham including notices of deposition of several representatives of AmSouth. In April of 2004, AmSouth responded to the discovery requests by filing motions to quash the deposition notices and subpoenas for the appearance of those witnesses. The probate court granted the motion to quash and set a date for the hearing as to AmSouth's request to be responsible for the litigation on behalf of the ward. Following a hearing on AmSouth's motion, the probate court gave AmSouth "exclusive control" over the federal litigation.

The date of the order giving AmSouth exclusive control over the federal litigation was May 10, 2004; yet, Mrs. Cunningham did not file her response to AmSouth's motion to be responsible for the federal litigation until June 1, 2004. Her response to AmSouth's motion included a cross claim against AmSouth to remove it as a conservator due to an alleged conflict of interest. It also included what the pleading identified as a "cross claim" against the Department of Veterans' Affairs which was not a party.[6]

On the same day she filed her cross claims, Mrs. Cunningham filed a motion to vacate the May 10 order. In the motion she alleged the order misstated the nature of the April 22 hearing, and that the subject of the hearing was not AmSouth's petition to obtain exclusive control over the litigation but her motion to reinstate her notices of deposition. Mrs. Cunningham also filed a motion to alter or amend the May 10 order and a motion for default judgment against AmSouth and the Department of Veterans' Affairs. Mrs. Cunningham's motions were denied by separate court orders entered August 31, 2004, following which she perfected this appeal.

Mrs. Cunningham presents a number of issues, although her primary complaints are that the probate court vested AmSouth with exclusive control over the fed-

---

Law. The Uniform Veterans' Guardianship Law identifies the court appointed fiduciary for the ward as the "guardian." Tenn.Code Ann. § 34–5–102(4). Other than name, there is no distinction in the rights and responsibilities of a conservator appointed pursuant to Tenn.Code Ann. § 34–3–101 and a guardian appointed pursuant to the Uniform Veterans' Guardianship Law. For purposes of the issues presented the few distinctions have no effect on the rights and responsibilities of conservators.

**6.** A cross claim that arises out of the same transaction or occurrence or relates to any property that is the subject matter of the original action may be asserted against a co-party over which the court has obtained personal jurisdiction. Tenn. R. Civ. P. 13. When a claim is being asserted against a nonparty over which the court does not yet have personal jurisdiction, it is a third party claim, which carries with it a duty to issue summons and to comply with due process requirements. Tenn. R. Civ. P. 14.

eral litigation without conducting an evidentiary hearing and failed to conduct an evidentiary hearing on her petition to remove AmSouth as a co-conservator.[7] She also contends the probate court erred by dismissing her "cross claim" against the Department of Veterans' Affairs.

## ANALYSIS

As conservator, wife and next friend of Roy Cunningham, Anna Cunningham filed litigation in federal court against the Department asserting its medical staff was responsible for her husband's stroke and resulting coma. In May of 2004, AmSouth petitioned the probate court to designate it as the party responsible for the litigation on the ward's behalf. As grounds, it asserted the litigation was not in the best interest of the ward and that Mrs. Cunningham was not the proper person to control the litigation because she married the ward four months prior to his stroke; they were separated at the time of the stroke, and prior to the stroke, the ward had hired an attorney to prepare divorce papers.

AmSouth's petition requesting the court to vest it with exclusive control of all litigation on behalf of the ward was not a request to remove Mrs. Cunningham from her status as conservator of the person, but rather a request to further specify the respective duties of AmSouth as financial or legal conservator and Mrs. Cunningham as the conservator of the person.

According to the record, the court conducted a hearing pursuant to AmSouth's

petition on this matter on April 22, 2004, and concluded it was in the ward's best interest for AmSouth to have control of litigation on behalf of the ward. Mrs. Cunningham contends the subject of the April 22 hearing was not AmSouth's petition to control the litigation; instead, it focused on her motion to reinstate the notices of deposition and subpoenas that had been quashed. Consistent with her assertion, we note that the record indicates Mrs. Cunningham did not file a responsive pleading to AmSouth's petition to be responsible for the litigation until June 1, 2004, which was almost one month later. Nevertheless, our review is limited to the record before us, and the order states the court conducted a hearing on AmSouth's petition to have control over the federal litigation. There is no transcript of the evidence to support Mrs. Cunningham's contentions as to what did or did not occur at the hearing. We, therefore, must rely on the record, and the record tells us a hearing on the issue of control over the federal litigation occurred as stated in the trial court's order.

## MODIFICATION OF CONSERVATORS' DUTIES WITHOUT EVIDENTIARY HEARING

The purpose of a conservatorship is to protect the person and the property of the disabled person, the ward. Conservators are court appointed fiduciaries who act as agents of the court and their rights and responsibilities are set forth in the court's orders.[8] The statutory definition of con-

---

7. She also complains that the court denied her a hearing concerning her motion for default judgment against AmSouth due to its failure to respond to her counterclaim wherein she sought to remove AmSouth as the financial guardian (conservator of the estate) and sought the appointment of a guardian ad litem to investigate whether AmSouth had a

conflict of interest concerning the federal litigation.

8. The order appointing the conservator shall identify the conservator, "enumerate the powers removed from the respondent and vested in the conservator," and state "any other authority or direction as the court determines is appropriate to properly care for the person or

servator is a person "appointed by the court to provide partial or full supervision, protection and assistance of the person or property or both of a disabled person." Tenn.Code Ann. § 34–1–101(4). A "disabled person" is any person eighteen years of age or older "determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity." Tenn.Code Ann. § 34–1–101(7).

■ Persons do not attain the office of conservator by contract or family relationship.[9] They are appointed to act in the best interests of the disabled adult person for whom they are partially or fully responsible in the discretion of the court. Although there is a statutory order of priority of persons the court is to consider when selecting a conservator, the order of priority is subject to the court's determination of "what is in the best interests of the disabled person."[10] *See In re Rockwell,* 673 S.W.2d 512, 516 (Tenn.Ct.App.1983) (holding the selection of the person to be appointed guardian is a matter which is committed largely to the discretion of the appointing court, and an appellate court will interfere with the exercise of this discretion only in case of a clear abuse).

■ A conservator occupies a fiduciary position of trust of the highest and most sacred character. *Grahl v. Davis,* 971 S.W.2d 373, 377 (Tenn.1998) (citing *Meloy v. Nashville Trust Co.,* 177 Tenn. 340, 149 S.W.2d 73 (1941)). Although the conservator plays a most important fiduciary role, it is significant to note that "the court itself is ultimately responsible for the disabled persons who come under its care and protection." *In re Conservatorship of Clayton,* 914 S.W.2d 84, 90 (Tenn.Ct.App. 1995) (citing *Hinds v. Buck,* 177 Tenn. 444, 150 S.W.2d 1071, 1072 (1941); *In re Ellis,* 822 S.W.2d 602, 607 (Tenn.Ct.App.1991)).[11]

■ The authority, rights and responsibilities of a conservator are not independent of the court. "Conservators act as the court's agent and are under the court's supervision." *Clayton,* 914 S.W.2d at 90. The courts appointing conservators "retain continuing control over guardians and conservators because the persons who accept these appointments become 'quasi-officials'

property of the ward." Tenn.Code Ann. § 34–3–107(1), (2) and (4). The conservatorship statutory scheme prohibits anyone from undertaking the administration of a disabled person until the person has been issued letters of conservatorship. Tenn.Code Ann. § 34–1–104(a). Additionally, bond must be posted if required by the court. Tenn.Code Ann. § 34–1–109(b).

9. Tenn.Code Ann. § 34–3–103 identifies an order of priority by which the court shall consider persons who are seeking to be appointed conservator; however, that priority is subject to the court's determination of "what is in the best interests of the disabled person." The order of priority is as follows: (1) the person(s) designated in a writing signed by the disabled person; (2) spouse; (3) adult child; (4) closest relatives; and (5) other persons. *Id.*

10. Following the entry of an order designating a person as another's conservator and before the conservator's appointment becomes effective, the designated conservator must take an oath for the faithful performance of the conservator's duties. Tenn.Code Ann. § 34–1–109(b).

11. The court is always the ultimate guardian of persons under disability, such as those who are insane, who come under its care and protection. . . . [C]ourts, acting in *loco parentis,* and as general guardians for minors, . . . and persons of unsound mind, will do for them and their property what they themselves would in all probability have done if possessed of good reason and good conscience. *Kilby v. Kilby,* No. 03A019712–CH00549, 1999 WL 76065, *5 (Tenn.Ct.App. Jan.28, 1999).

of the court appointing them." *Clayton,* 914 S.W.2d at 92 (citing *Logan v. Graper,* 155 Tenn. 565, 4 S.W.2d 955, 956 (1927)).

■ Following a conservator's appointment, the court may discharge a conservator or modify the duties and authority of the conservator if the court determines the conservator has failed to perform its duties and obligations, or if the court determines the conservator has failed to act in the ward's best interest so as to warrant modification. Tenn.Code Ann. § 34–3–108(a). Because a conservator is in a sense the agent through whom the probate court manages the affairs of a ward, the right to choose its representative is important to the tribunal. *Monteverde v. Christie,* 23 Tenn.App. 514, 134 S.W.2d 905, 910 (1939). An appellate court, far removed from the scene will be slow, indeed, to substitute its judgment for that of the probate court. *Id.* "The removal of a guardian is largely a matter in the discretion of the Probate Judge and the court's action in this respect is not to be disturbed except upon a clear case of abuse of that discretion." *Id.*

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001) (quoting *State v. Scott,* 33 S.W.3d 746, 752 (Tenn.2000)(other citations omitted)). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge,* 42 S.W.3d at 85 (citing *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn.1998)).

■ Significant to the matters at issue, the statutory scheme for conservatorships provides for a variety of means, including very informal forms of communication, by which the court may be apprised of a need to modify a conservator's duties or to discharge a conservator. Tenn.Code Ann. § 34–3–108(b). Although the court is to conduct "a hearing" upon receipt of a petition filed under Tenn.Code Ann. § 34–3–108, the statute does not prescribe the type of hearing or the timing of the hearing, Tenn.Code Ann. § 34–3–108(c), nor does it preclude the court from acting *sua sponte* or upon an *ex parte* hearing if the court deems immediate action is in the best interests of the ward.

■ Further, Tenn.Code Ann. § 34–1–123 expressly authorizes the court "in its discretion" to summon a fiduciary before the court and, if cause be shown, remove the conservator for any abuse, mismanagement, neglect or failure to perform her duties. The statute does not, however, prescribe a formal procedure for "summoning" the conservator and does not mandate an evidentiary hearing. The probate court has, and indeed must have, the inherent authority to act *sua sponte* or upon an *ex parte* application prior to holding an evidentiary hearing when in the court's discretion it deems it in the best interest of the ward for whom it is ultimately responsible. *See Nutting v. Alsup,* 60 Tenn.App. 467, 448 S.W.2d 77, 80 (1969) (reasoning that to hold otherwise would emasculate the inherent power of the probate courts to preserve and conserve the estates of incompetents and deceased persons by making temporary emergency appointments where necessary).

■ There are cases that provide for a practice of presenting such matters for modification of duties or removal of conservators by petition, with notice thereof and a hearing, *Ridgely v. Bennett,* 81 Tenn. 206 (1884); however, there are also cases providing for an informal protocol. *See Gwin v. Vanzant,* 15 Tenn. 143 (1834) (finding notice sufficient if the guardian appeared or had notice of the application).

Nevertheless, the removal of a guardian is a matter of discretion, which is not to be disturbed except upon a clear case of abuse of such discretion. *Monteverde*, 134 S.W.2d at 910. We see no reason to treat the modification of the authority, power, and duties of a conservator in a different fashion.

The facts in the record are sufficient to establish that Mrs. Cunningham had notice of AmSouth's attempts to modify the duties and responsibilities of the co-conservators so that AmSouth would be assigned "exclusive control" over the federal litigation and that she appeared at a hearing on the matter.[12] Based upon these facts, we have concluded that the probate court did not abuse its discretion by modifying the co-conservators' respective duties and responsibilities without first conducting a formal evidentiary hearing. Accordingly, we affirm the probate court's decision to assign exclusive control over the federal litigation to AmSouth.

### PETITION TO REMOVE AMSOUTH AS CONSERVATOR

■ Mrs. Cunningham complains that she has been denied an appropriate hearing on her petition to remove AmSouth as co-conservator and to retain control over the federal litigation. Her petition to remove the bank as a conservator and divest it of control over the ward's federal litigation against the Department of Veterans' Affairs is primarily based upon an allegation the bank has a conflict of interest. The conflict of interest, Mrs. Cunningham contends, arises from the bank's relationship with the Department in other conservatorships. Generally stated, she contends the bank serves as conservator for several veterans for which it is compensated, that it obtains the appointments because the Department requests that the bank intervene on behalf of the veterans, and therefore it cannot fulfill its duty of fidelity and impartiality to her husband concerning the federal litigation in which the Department is the defendant.

As we stated earlier, the probate court has broad discretion when making decisions about what is in the best interest of the ward and who should serve as conservator. Whether a conservator has a conflict of interest concerning a particular matter is relevant to what is in the best interest of the ward. In such matters we are deferential to the judgment of the probate court. Nevertheless, even in conservatorship matters, interested parties who file petitions and demand hearings are generally entitled to their so-called "day in court" unless the matter is moot, frivolous, barred by the doctrine of *res judicata*, or as in matters of summary judgment, the material facts are not disputed or a party is entitled to relief as a matter of law, in which event an evidentiary hearing may not be necessary.

The record before us is somewhat scant and inconsistent as it concerns the extent of the April hearing at issue. The best record of what occurred is reflected in the May 10, 2005 order. That order indicates a hearing was conducted regarding AmSouth's petition (there is no reference to Mrs. Cunningham's response to AmSouth's petition or to her petition), that counsel for Mrs. Cunningham was present, and that counsel for AmSouth was not present but participated by phone. The order makes no reference to witnesses testifying. Nevertheless, it is doubtful an evidentiary hearing occurred because AmSouth's counsel was not present in the courtroom, and

---

12. We acknowledge Mrs. Cunningham's contention that other issues were set for hearing on the day in question but the record indicates that the modification of the co-conservators' duties and responsibilities was also addressed at the hearing.

the notices of depositions of and subpoenas for its employees were quashed prior to the hearing.

Based upon the modest evidentiary record before us, we are unable to conclude that Mrs. Cunningham is not entitled to a hearing on her petition to remove AmSouth Bank as a conservator and/or to divest the bank of its control over the ward's federal litigation. We, therefore, remand the matter to the probate court for further proceedings consistent with this opinion to consider, among other things the probate court deems appropriate, whether the bank and/or Mrs. Cunningham should continue to serve as co-conservators, whether the bank should retain exclusive control over the federal litigation, or whether another conservator should be appointed to succeed the bank and/or Mrs. Cunningham.

### THE CLAIM AGAINST THE UNITED STATES OF AMERICA

Mrs. Cunningham included in her response to AmSouth's petition a claim against the Department of Veterans' Affairs. When the Department failed to respond to her pleading, Mrs. Cunningham moved for a default judgment. The trial court denied her motion and dismissed the claim against the Department. Mrs. Cunningham erroneously contends this was error. It was not.

The trial court properly denied the motion for default and dismissed the action against the Department. There are a number of grounds to support this decision. One is that the Department was not a party because it had not filed a pleading, nor had it made an appearance in the conservatorship proceedings. A cross claim can only be asserted against a party. Tenn. R. Civ. P. 13. A claim by a defendant in an existing action against a nonparty is identified in Tenn. R. Civ. P. 14 as a third party claim. The rules require the third party claimant to comply with the service of process requirements in Tenn. R. Civ. P. 4 and concepts of due process. Mrs. Cunningham made no attempt to comply with either rule in asserting her purported "cross claim" against the Department. In the absence of service of process on the Department, the probate court did not have jurisdiction over the Department.

Another ground supporting the probate court's dismissal is sovereign immunity. The intended third party defendant is the Department of Veterans' Affairs, an agency of the United States of America. The United States has sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). A suit against the federal government cannot proceed without the government granting a specific waiver of sovereign immunity. *Id. at* 1351. The defense of sovereign immunity applies to third party claims. *United States v. Yellow Cab Co.*, 340 U.S. 543, 553–54 71 S.Ct. 399, 406, 95 L.Ed. 523 (1951) (holding that sovereign immunity also applies to cross claims and third party claims).

The Department has not waived its sovereign immunity. Therefore, the probate court did not have jurisdiction over the Department. Accordingly, we affirm the dismissal of the "cross claim" against the Department.

### IN CONCLUSION

The judgment of the trial court is affirmed in part, and this matter is remanded with instructions that the probate court conduct an appropriate hearing on Mrs. Cunningham's petition to remove AmSouth Bank as a co-conservator along with such other matters, issues, and pleadings that may come to the attention of the court. Costs of this appeal are assessed against

the conservatorship of Roy Cunningham, with AmSouth Bank, in its capacity as conservator of the estate, instructed to remit payment of said costs.