# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
### October 23, 2012 Session

## IN RE THE CONSERVATORSHIP OF
## ALFONSO B. PATTON

### Appeal from the Probate Court for Davidson County
### No. 10P191    Hon. David Randall Kennedy, Judge

### No. M2011-01296-COA-R3-CV - Filed December 6, 2012

In this conservatorship case, Gloria and John Walker filed a petition in which they sought to be appointed as the conservator of Alfonso B. Patton. Patricia Richmond protested, alleging that she would be an appropriate conservator. Prior to a full hearing on the petition, the trial court appointed the Walkers as temporary conservators of the estate and Patricia Richmond as a temporary conservator of the person. Following approximately one year of protracted litigation, the court confirmed that Alfonso B. Patton was in need of a conservator of his estate and of his person. The court subsequently appointed a neutral, third-party as permanent conservator of the estate and of the person. Patricia Richmond appeals. We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

James D. R. Roberts, Jr. and Janet L. Layman, Nashville, Tennessee, for the appellant, Patricia Richmond.

Peggy D. Mathes, Nashville, Tennessee, for the appellee, Guardianship and Trust, Corporation.

Paula Whitson Reed, Nashville, Tennessee, attorney ad litem for the appellee, Alfonso B. Patton.

## OPINION

## I. BACKGROUND

Alfonso B. Patton ("Ward") was born on October 15, 1917. Ward owned a 50 percent interest in Patton Brothers Funeral Home ("the funeral home") and worked at the funeral home for most of his life. While married to Kathryn Patton, he fathered one child, Patricia Richmond ("Daughter"), with Christine King in 1953. Initially, he did not admit paternity of Daughter. Following Ms. Patton's death in 2005, Daughter was adjudged to be Ward's biological child pursuant to an order entered in 2006. At some point, Ward acknowledged Daughter as his child.

In November 2006, Daughter sought appointment as Ward's conservator. She subsequently dismissed the petition. On January 23, 2008, Ward executed a durable power of attorney, naming Daughter as his attorney-in-fact. The 2008 appointment invalidated George Baker's appointment as Ward's attorney-in-fact. While acting as Ward's attorney-in-fact, Daughter awarded herself and her husband, Ronnie Richmond ("Husband"), a combined salary in excess of $100,000; loaned in excess of $200,000 to her daughter and son-in-law (collectively "the Lowes"); purchased two properties, one for $137,000 and another for $245,000; and used a substantial amount of Ward's monetary assets to renovate Ward's home and the newly purchased properties. Daughter purchased several vehicles and made other substantial expenditures. She also re-titled several of Ward's properties by adding herself to the title or removing Ward from the title and substituting either herself or herself and Husband. Throughout her tenure as Ward's attorney-in-fact, Ward's estate dramatically decreased in monetary value.

On February 3, 2010, Gloria Walker and John Walker (collectively "the Walkers") filed a petition, alleging that Ward was in need of a conservator.[1] The Walkers also filed a petition for recoupment against Daughter, alleging that she had engaged in self-dealing while acting as Ward's attorney-in-fact. The recoupment petition and the instant case were bifurcated. As relevant to this case, the Walkers initially sought a neutral, third-party to serve as Ward's conservator but subsequently amended the petition to request their appointment as conservator. They alleged that Ward was advanced in age and suffered from "Alzheimer's disease and an advanced stage of dementia." They asserted that during Mr. Baker's tenure as Ward's attorney-in-fact, Mr. Baker sold four of Ward's properties in a lump sale for less than what the properties were worth. They feared that the same would occur during Daughter's tenure as Ward's attorney-in-fact and asserted that Daughter had already conveyed several properties, resulting in Ward's detriment.

---

[1] Ms. Walker was Ward's second cousin and Mr. Walker's mother.

Daughter denied any wrongdoing and filed a counter-petition, requesting her appointment as Ward's conservator. She alleged that Ward designated her as his choice of conservator pursuant to the durable power of attorney and that she was due favorable consideration in the court's determination because she was Ward's daughter. In the interim, she requested appointment of either herself or another person as Ward's temporary conservator.

Following a hearing, the court found that Ward was in need of a conservator of his estate and of his person, appointed the Walkers as temporary conservators of Ward's estate, and appointed Daughter as the temporary conservator of Ward's person. The court ordered Daughter to

> convey, transfer, restore, re-title and assign into the name of the Estate Co-Conservators on behalf of [Ward], any and all assets that were transferred out of the name of [Ward] into her name and/or into anyone else's name, including [Husband]. Any such asset shall be titled in the names of "Gloria E. Walker and John W. Walker, Jr., Co-Conservators for Alfonso. B. Patton."

The court revoked all previous durable powers of attorney and ordered Daughter to submit an accounting of her management of Ward's estate and any additional information needed to complete Ward's tax return.

Following the court's order, the parties filed *exhaustive* motions and petitions proclaiming that the other had engaged in wrongdoing and that his or her respective appointment as permanent conservator of Ward's estate was proper because he or she had not engaged in wrongdoing. Additionally, Daughter alleged that the temporary appointment of the Walkers as Ward's conservator was invalid because the court did not consider any medical evidence regarding Ward's ability to care for himself. Meanwhile, Husband and the Lowes were added as parties to the case in order to facilitate the reconveyance of assets that they had received during Daughter's tenure as Ward's attorney-in-fact. Ward was ordered to undergo a medical examination, which revealed that Ward was in fact suffering from advanced dementia and was in need of a conservator or guardian to act on Ward's behalf given the nature of his disability. Eventually, Daughter was held in contempt and placed in jail for her failure to re-convey several of Ward's assets. Daughter was released the next day when she followed the court's order. Following Mr. Walker's admission that he had borrowed funds from the estate for his personal use without the court's permission, Mr. Walker withdrew as temporary conservator of Ward's estate. Mr. Walker also admitted that he had stayed in one of Ward's properties while acting as conservator of Ward's estate.

During subsequent hearings on Ms. Walker's remaining petition and Daughter's responsive petition, Ms. Walker admitted that she was unaware of Mr. Walker's unauthorized expenditures. She also admitted that in the course of nine months, she and Mr. Walker spent $182,622 of estate funds. She explained that they spent more than $36,000 to assist the funeral home "because the business was going downhill." She acknowledged that she did not seek advice as to whether investing in the funeral home would benefit Ward's estate and that Ward had not received a salary from the funeral home in several years. She also acknowledged that her mother owned part of the funeral home property and that her mother had assigned the interest in the property to her. She believed that Daughter should remain in the position as conservator of Ward's person but asserted that Daughter would not be an appropriate conservator of Ward's estate given Daughter's past depletion of Ward's assets.

Daughter admitted that she depleted Ward's assets but asserted that each expenditure and conveyance was made with Ward's approval. She noted that she was the sole beneficiary in Ward's holographic will and that Ward sought to leave his assets to her upon his death. She argued that she improved Ward's residence, that she purchased properties to ensure that he received rental income, and that she simply sought to ensure that Ward was "well taken care of for the rest of his life." She presented evidence to establish that Ward's physical condition and his residence dramatically improved during her tenure as Ward's attorney-in-fact. She claimed that the Walkers ceased payment of Ward's salary from the funeral home in 2010, unnecessarily depleted Ward's estate, and failed to pay the taxes on Ward's properties. She alleged that Mr. Walker used funds from the estate for his personal use and had been dishonest, namely he exaggerated his yearly income and neglected to mention that his driver's license had been suspended for failure to pay child support. She presented evidence to establish that the Walkers, along with Mr. Baker, had engaged in a scheme to forge a will in which they would profit from Ward's death.

Following the presentation of the above evidence and several additional hearings not relevant to the appeal of the final order, the court finally found that neither Ms. Walker nor Daughter were suited to perform as Ward's conservator. The court found that it was in Ward's "paramount best interest" to appoint a third party as Ward's permanent conservator. Therefore, the court appointed Guardianship and Trust, Corporation ("GTC") as the conservator of Ward's estate and of his person. Relative to Daughter, the court stated,

> The [c]ourt finds that the pending claims brought by the [Walkers] against [Daughter] concerning her actions as attorney in fact for [Ward] prior to the filing of this conservatorship action create an insurmountable conflict of interest that prevents [Daughter] from serving as conservator of [Ward's property]. If appointed to serve in this position [Daughter] would literally be

-4-

charged with the responsibility of prosecuting a claim, as conservator, against herself, individually.

The [c]ourt finds that [Daughter] has established a history of violating orders of this [c]ourt and refusing to follow [c]ourt orders. The [c]ourt further finds that [Daughter] has engaged in self-dealing to the detriment of [Ward] while serving as attorney in fact for [Ward] and has exercised poor judgment in the management of [Ward's] affairs while acting as his attorney in fact. Just one example of this poor judgment was the use of $137,000 of [Ward's] money to purchase a home [], titling that property in [her and Husband's name], spending approximately $130,000 of [Ward's] money to renovate this home, and then listing the home for sale for $154,000 within a relatively short period of time.

The [c]ourt finds that in regard to the care of [Ward's person], there is no question but that [Ward's] living conditions [] have been enhanced by [Daughter's actions]. The testimony is undisputed that [Ward] lived in a home that was dirty and not well kept before [Daughter] became involved in providing assistance to him and that his circumstance has substantially improved with her assistance.

The [c]ourt further finds that [Daughter] may serve as [Ward's] caretaker [] without being the conservator of his person. The [c]ourt finds that it would be appropriate for [Daughter] to continue as the caretaker [] and may be paid under the terms currently in place, pending further orders of the [c]ourt, but it would not be in [Ward's] best interest [] for [Daughter] to serve as the conservator of his person.

This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Daughter as follows:

A. Whether the trial court abused its discretion by appointing GTC as Ward's conservator.

B. Whether the trial court failed to protect Ward's estate.

## III.  STANDARD OF REVIEW

"[A] petition for the appointment of a conservator requires the [trial] court to make legal, factual, and discretionary determinations[,]" each of which requires a different standard of review. *Crumley v. Perdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov. 7, 1997). In the instant case, the conservatorship issues on appeal relate to the trial court's designation of a conservator, which is always left to the discretion of the trial court. Tenn. Code Ann. § 34-3-103; *see also In re Rockwell*, 673 S.W.2d 512, 516 (Tenn. Ct. App. 1983). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV.  DISCUSSION

### A.

"The purpose of a conservatorship proceeding is to protect the person and property of a disabled person." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995). In conservatorship cases, it is the petitioner's burden to prove by clear and convincing evidence that the proposed ward is a "disabled person." *In re Conservatorship of Groves*, 109 S.W.3d 317, 330 (Tenn. Ct. App. 2003). Tennessee Code Annotated section 34-1-101 defines a "disabled person" as:

> [A]ny person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity.

In the instant case, it is undisputed on appeal that Ward was disabled and in need of a conservator of his estate and of his person. We affirm the court's decision in that regard. Having determined that the appointment of a conservator of the estate and of the person was necessary, we must consider whether the trial court abused its discretion by appointing GTC as Ward's conservator. *See Rockwell*, 673 S.W.2d at 516 (providing that the designation of the conservator is left to the discretion of the trial court).

"A conservator occupies a fiduciary position of trust of the highest and most sacred character." *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (citing *Meloy v. Nashville Trust Co.*, 149 S.W.2d 73 (Tenn. 1941)). The conservator is tasked with managing the estate to the ward's "best advantage" and preserving the estate for the ward in the event that the ward recovers. *Id.* "Persons do not attain the office of conservator by contract or family relation." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006). "They are appointed to act in the best interest[] of the disabled adult person for whom they are partially or fully responsible in the discretion of the court." *Id.* In determining which person should be appointed, the court is guided by the following statutory order of priority:

> (1) The person or persons designated in a writing signed by the alleged disabled person; (2) The spouse of the disabled person; (3) Any child of the disabled person; (4) Closest relative or relatives of the disabled person; and (5) Other person or persons.

Tenn. Code Ann. § 34-3-103. However, the order of priority is "[s]ubject to the court's determination of what is in the best interest of the disabled person." Tenn. Code Ann. § 34-3-103. Thus, in appointing a conservator pursuant to Tennessee Code Annotated section 34-3-103, the trial court must make two determinations: (1) what is in the best interest of the disabled person and (2) "based on the first determination, who is the appropriate conservator given the prioritized list." *Crumley*, 1997 WL 691532, at *3.

Once appointed, "[t]he authority, rights and responsibilities of a conservator are not independent of the court." *Cunningham*, 253 S.W.3d at 642. The conservator must "'act as the court's agent'" and may be discharged "if the court determines that the conservator has failed to perform its duties and obligations, or if the court determines the conservator has failed to act in the ward's best interest so as to warrant modification." *Id.* at 642-43 (quoting *Clayton*, 914 S.W.2d at 90). Indeed, "[t]he court itself is ultimately responsible for the disabled persons who come under its care and protection." *Clayton*, 914 S.W.2d at 90 (citations omitted).

Daughter asserts that the trial court abused its discretion by appointing GTC as Ward's conservator. She notes that Ward appointed her as his power of attorney, thereby designating her as his choice of conservator, that she was Ward's daughter, and that her care for Ward was more than adequate. She claims that her expenditures were authorized by Ward and that Ward sought to leave his entire estate to her, not third parties or distant relatives. GTC responds that the trial court did not err in appointing the permanent conservator. GTC acknowledges that Daughter served as Ward's attorney-in-fact but asserts that Ward never designated her as his conservator when he executed the durable power of attorney.

Tennessee Code Annotated section 34-6-104 provides, as relevant to this case,

> (a) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator [] charged with the management of all of the principal's property or all of the principal's property except specified exclusions, *the attorney in fact is accountable to the fiduciary as well as to the principal*. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if the principal were not disabled or incapacitated.

(Emphasis added). Thus, the court may appoint a conservator to act on a principal's behalf even if the principal executed a durable power of attorney naming another party as his or her attorney-in-fact. However, the statute further provides, in pertinent part,

> A principal *may* nominate, by a durable power of attorney, the conservator, guardian of the estate or guardian of the principal's person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced.

Tenn. Code Ann. § 34-6-104(b) (emphasis added). If a ward makes such a nomination, "[t]he court shall make its [conservatorship] appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification." Tenn. Code Ann. § 34-6-104(b).

In this case, Ward's durable power of attorney did not provide for the express nomination of a conservator if protective proceedings were commenced following the appointment of Daughter as Ward's attorney-in-fact. As relevant to this issue, the document merely provided, "This Power of Attorney shall not be affected by subsequent disability or incapacity of the principal." Accordingly, we reject Daughter's assertion that Ward's general execution of the durable power of attorney effectively designated her as conservator pursuant to Tennessee Code Annotated section 34-3-103. *See generally In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *20 (Tenn. Ct. App. Dec. 27, 2005) (providing that while the ward designated a conservator to act on her behalf when she executed her durable power of attorney, the designation was of no effect because the person nominated was deceased).

We also reject Daughter's remaining assertions, namely that the court erroneously ignored the statutory order of priority and her continued personal care for Ward. We do not wish to discount the fact that Daughter was Ward's child or that she provided loving care for Ward and improved his physical condition. However, this court, like the trial court, cannot

ignore the fact that if appointed as conservator, Daughter would be tasked with acting as the court's agent and safeguarding Ward's estate. As noted by the court, Daughter consistently displayed a defiant attitude toward the court as evidenced by her refusal to follow the court's orders. Problems may arise in the future regarding Ward's personal care that would require Daughter to work with the court and follow court orders. Questions also remain as to whether Daughter would act in Ward's best interest relative to estate matters when she depleted Ward's estate in such a short amount of time. Regardless of whether Ward intended for Daughter to receive the balance of his estate upon his death, the person or entity acting as conservator must safeguard the estate for Ward, not his intended beneficiaries. With all of these considerations in mind, we agree with the trial court that Daughter's appointment as conservator would not be in Ward's best interest. Accordingly, we conclude that the court did not abuse its discretion in appointing GTC to act as Ward's conservator of his estate and of his person.

B.

Daughter asserts that the court's appointment of the Walkers as temporary conservators resulted in the dissipation of Ward's assets. GTC responds that the court considered Mr. Walker's mishandling of funds at the final hearing on the petition for conservatorship and acted to protect Ward's estate by formally removing the Walkers as conservators. In Daughter's reply brief, she asserts that in addition to the dissipation of the estate caused by the Walkers, nearly $90,000 in attorney fees and mediation expenses were paid to third parties following GTC's appointment as conservator.

While we agree that Mr. Walker resigned as conservator following his admission that he mishandled funds and that Ms. Walker was ultimately discounted as a co-conservator, we cannot fault the court for its appointment of the Walkers as temporary conservators. The Walkers presented themselves as responsible relatives that were concerned about Ward's welfare. The court held numerous hearings in its effort to monitor the estate. Additionally, the court appointed a neutral party as conservator of the estate following Mr. Walker's mishandling of funds and Ms. Walker's failure to monitor Ward's estate. We do not believe that the court abused its discretion by attempting to find a relative that could responsibly act as Ward's conservator and then removing the relatives when they were subsequently proved unworthy. Likewise, we disagree with Daughter's assertion that the appointment of GTC resulted in the further dissipation of Ward's assets. The alleged erroneous expenditures listed in the reply brief relate to fees and expenses incurred in the conservatorship action that Daughter vehemently opposed and prolonged. The fees and expenses were adjudged by the trial court to be appropriate expenditures that should be charged against the estate. Additionally, the expenditures included approximately $30,000 of Daughter's attorney fees. This issue is without merit.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Patricia Richmond.


_____
JOHN W. McCLARTY, JUDGE