IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2019 Session

## JOHN WESLEY SULLIVAN ET AL. v. BRENDA KREILING

**Appeal from the Circuit Court for Maury County**
**No. 16073     Stella L. Hargrove, Judge**

_____

**No. M2018-00885-COA-R3-CV**

_____

This appeal arises from an unlawful detainer action initiated by the conservator of the owner of the property. After the general sessions court awarded the conservator possession of the property, the defendant appealed to circuit court. The defendant then filed a motion for summary judgment, alleging that the conservator had exceeded the scope of the conservatorship in filing the unlawful detainer action, and that unlawful detainer was not the proper cause of action. The circuit court denied summary judgment, and the case proceeded to a bench trial. Following trial, the circuit court awarded possession of the house to the conservator, and the defendant now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and W. NEAL MCBRAYER, JJ., joined.

Joshua Richard Thomas and David A. Kozlowski, Columbia, Tennessee, for the appellant, Brenda Marie Kreiling.

Kevin Ryan Bragg, Murfreesboro, Tennessee, for the appellee, Joshua R. Sullivan.

### OPINION

John Wesley Sullivan has owned the residential property at issue, located at 213 Ashwood Drive in Columbia, Tennessee, for more than twenty years. During this time, up to and until December 2016, Mr. Sullivan and his girlfriend, Brenda Kreiling, lived together at this address without Ms. Kreiling being asked to pay rent, utilities, or household maintenance.

In December 2016, Mr. Sullivan suffered a debilitating stroke and has resided in an assisted living facility ever since while Ms. Kreiling has continued to reside in Mr. Sullivan's home on Ashwood Drive without paying rent.

In February 2017, Mr. Sullivan's son, Joshua R. Sullivan, his daughter, Dana Michelle Jones, and his girlfriend, Ms. Kreiling, filed separate petitions in the Chancery Court for Maury County to be appointed the conservator for Mr. Sullivan.[1] In August 2017, after a lengthy hearing, the chancellor appointed Joshua Sullivan (hereinafter "the Conservator") conservator of his father's person and estate.[2]

During the hearing on the petition to appoint a conservator, the chancellor specifically discussed the utilization of the home on Ashwood Drive as an income-producing asset, stating that the Conservator would be responsible for management of the Ashwood Drive property including whether Ms. Kreiling was to pay rent.

Shortly after his appointment, the Conservator informed Ms. Kreiling that she would have to pay rent if she intended to stay in the home. The Conservator said this discussion was undertaken in the hopes of offsetting the costs of care for Mr. Sullivan and the upkeep of the home. Ms. Kreiling responded that she had never paid rent and had no intentions of paying rent in the future. Shortly thereafter, when the Conservator went to the Ashwood Drive property to inspect the property as part of his duties under the conservatorship, Ms. Kreiling prevented the Conservator from entering the home.

Because Ms. Kreiling refused to pay rent, the Conservator sent a Notice of Eviction to her in September 2017, giving Ms. Kreiling thirty days to vacate the home. After more than thirty days passed and Ms. Kreiling refused to pay rent or vacate the home, the Conservator filed an unlawful detainer action in Maury County General Sessions Court seeking to remove Ms. Kreiling from the home. In the Detainer Summons, the Conservator noted that Ms. Kreiling's initial possession was based on "[c]o-habitation with boyfriend." The Detainer Summons further alleged that the Conservator's right to possession was based on the "conservatorship . . . established for John W. Sullivan and [Ms. Kreiling] is not agreeable to paying rent." Following a trial, the Conservator was awarded possession of the home.

Ms. Kreiling appealed the decision of the general sessions court to the Maury County Circuit Court by filing a Petition for Writ of Certiorari and Supersedeas, which was granted by the circuit court. The Conservator then filed a motion to dismiss which

---

[1] Ms. Kreiling withdrew her petition prior to the hearing.

[2] Mrs. Jones was appointed standby conservator. The order states that her authority to act is pursuant to the terms of Tenn. Code Ann. § 34-1-119(b). The authority of Mrs. Jones is not at issue in this appeal.

the circuit court denied. Thereafter, Ms. Kreiling filed a motion for summary judgment. In her motion, Ms. Kreiling asserted that the action must be dismissed because there was no landlord-tenant relationship between her and Mr. Sullivan, and her right to live on the property was not based on a lease or contractual agreement between the parties. Therefore, Ms. Kreiling alleged that the remedy of unlawful detainer was not the appropriate cause of action to eject her from the residence. She also alleged that the Conservator exceeded the scope of the conservatorship in filing the unlawful detainer action against Mr. Sullivan's expressed desire for Ms. Kreiling to remain in the house.

Following a hearing on February 23, 2018, the circuit court took the motion for summary judgment under advisement. On February 26, 2018, the court issued a letter to the parties with its ruling on the motion, finding that as a matter of law, unlawful detainer was an appropriate remedy for the Conservator to regain possession of the residence. The judge further found that the remaining issue as to whether the Conservator had exceeded the scope of his authority was a genuine issue of material fact reserved for consideration at trial. On April 9, 2018, the court entered an order denying summary judgment nunc pro tunc to February 23, 2018.

A bench trial was held April 9, 2018. The court heard testimony from Mr. Sullivan, the Conservator, the Conservator's property manager, and Ms. Kreiling. Mr. Sullivan testified that most of his personal belongings remained in his home on Ashford Drive. He said that he leaves the assisted living facility to return home and stay with Ms. Kreiling "on the weekends, every chance [he] get[s]." Mr. Sullivan also testified that he did not want Ms. Kreiling evicted from the residence. The Conservator admitted that his father told him he wanted Ms. Kreiling to be allowed to continue living in the home without paying rent; nevertheless, the Conservator stated it was his affirmative duty to utilize the home as an income-producing asset regardless of his father's wishes.

As for the scope of the Conservator's authority, the chancery court's Order Appointing Conservator, which was introduced into evidence at trial in the circuit court, reads in pertinent part:

> This cause came to be heard before the Honorable J. Russell Parkes, Judge, on July 26, 2017, upon the sworn Petition of Joshua R. Sullivan for the appointment of a conservator of the person and property of the Respondent, John Wesley Sullivan and the Intervening Petition of Dana Michelle Jones. Based upon the sworn medical examination report filed by Dr. Bamigboye, the Respondent's physician, who is licensed to practice medicine in the State of Tennessee; the testimony of the Petitioner, Intervening Petitioner, statements in open court of counsel for both parties, the Guardian Ad Litem; Debbie Lovell and Robert Sullivan; and the entire record in this cause, from which the Court makes the following findings of fact and conclusions of law:

. . .

1. The Respondent is hereby declared to be a disabled person and unable to manage the affairs of his person and estate and is in need of a conservator to make provisions for him and to make personal, medical and financial decisions for him as enumerated in the attached findings and conclusions.

2. Joshua R. Sullivan, the Respondent's son, is appointed conservator of the person and estate of the Respondent, John Wesley Sullivan, and letters of conservatorship shall be issued to evidence this appointment.

. . .

5. Subject to the specific terms of the court's ruling, attached, the conservator is vested with all rights enumerated at Tenn. Code Ann. § 34-3-107 with the specific exception of section (P). The respondent shall maintain his authority regarding the "right to communication, visitation, or interaction with other persons, including the right to receive visitors, telephone calls, or personal mail."

Following the close of proof, the court made an oral ruling, finding that the Conservator had not exceeded his authority in filing the unlawful detainer action. The trial court reasoned that because the Conservator had a fiduciary duty to preserve Mr. Sullivan's estate and the residence was an "income producing asset that costs the estate money," it was appropriate for Ms. Kreiling to be evicted for refusing to pay rent. On April 12, 2018, an order was entered granting possession to Mr. Sullivan/the Conservator and reserving the issue of damages, based upon Ms. Kreiling still living in the home. The trial court subsequently resolved the outstanding issues and ruled that Ms. Kreiling must post an appellate bond in the amount of $10,000 if she sought a stay of execution and wished to remain in the home during the pendency of an appeal. Due to Ms. Kreiling's indigency, she could not post the bond for the stay of execution. Therefore, she voluntarily vacated the residence; however, Ms. Kreiling intends to return to the premises if the judgment of the Circuit Court is reversed, vacated, or otherwise modified.

Ms. Kreiling raises two issues on appeal.

1. Whether the trial court erred by denying Ms. Kreiling's motion for summary judgment and holding that unlawful detainer provides an appropriate remedy to Mr. Sullivan by his conservator to regain possession

of his residence when no landlord-tenant or contractual relationship existed between the parties.

2. Whether the trial court erred by finding that the conservator did not exceed the scope of his authority in filing this unlawful detainer action when such action was against the expressed wishes of Mr. Sullivan and fundamentally changed the character of his estate.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). If the trial court fails to explain the factual basis for its decisions, the appellate court "may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

I.  SUMMARY JUDGMENT

Ms. Kreiling contends that the trial court erred by denying her motion for summary judgment.

"[W]hen the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits." *Arrow Elecs. v. Adecco Employment Servs., Inc.*, 195 S.W. 3d 646, 650 (Tenn. Ct. App. 2005) (citations omitted). Thus, after summary judgment is denied based on the existence of a genuine issue of a disputed material fact and the parties

proceed to trial, "the question of the validity of the denial of summary judgment in effect becomes moot." *Alex Lyon & Son Sales Managers and Auctioneers, Inc. v. Boles*, No. M2010-00388-COA-R3-CV, 2010 WL 3895520, at *1 (Tenn. Ct. App. Oct. 5, 2010) (quoting *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 353 n.55 (7th Cir.1988)). Moreover, once a trial has happened and a judgment has been entered, there is simply no reason to revisit a denial of summary judgment. *Id.*

Here, the trial court's order denying summary judgment found that there existed "a genuine issue of material fact as to whether Joshua R. Sullivan was acting within the scope of his authority in his position as [the] Conservator, handling the affairs of the estate of his father, in seeking possession of John W. Sullivan's home." Because the trial court found a disputed material fact and subsequently held a trial on the merits of the case, the denial of summary judgment based on a finding of disputed facts is not an appealable issue. *See Arrow Elecs.*, 195 S.W.3d at 650. Nevertheless, whether an unlawful detainer action is the appropriate remedy by which the Conservator may regain possession of the property is a question of law. Therefore, we will address the issue.

Ms. Kreiling contends the only appropriate remedy was that of an ejectment action because there was no landlord-tenant or contractual relationship existed between the parties. Once again, we respectfully disagree.

Ejectment is a possessory action testing the right to possession of real property based on legal ownership. *See Harris v. Buchignani*, 285 S.W.2d 108, 111 (Tenn. 1955) (stating that "the plaintiff must show legal title and the right to immediate possession"). Ms. Kreiling does not dispute or challenge in any way the fact that Mr. Sullivan is the sole legal owner of the property. Moreover, Ms. Kreiling acknowledges she has no legal claim to the ownership of the property. Thus, an ejectment action is not the required remedy.

Conversely, and as explained by the Tennessee Supreme Court, a detainer action

> is a "purely possessive action" where there is no issue of legal title, *Metropolitan Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (Tenn. 1934), [whereas an] action for ejectment "is purely a legal action to be brought in circuit or chancery court with the only question being one of legal title and the right to possession in connection with the title." *Newport Hous. Auth. v. Ballard*, 839 S.W.2d 86, 89 (Tenn. 1992).

*Cain P'ship Ltd. v. Pioneer Inv. Servs*. Co., 914 S.W.2d 452, 456 n.4 (Tenn. 1996).

The Detainer Summons filed in the general sessions court, which represents the Conservator's claim for relief, does not identify a particular statute upon which the claim is based, and there are three sections of the detainer statutory scheme that could apply.

*See* Tenn. Code Ann. § 29-18-102(a), -103 to -104. Nevertheless, the Detainer Summons states, "Defendant's initial possession was based on . . . Co-habitation with boyfriend, John W. Sullivan, and the right to possession has now terminated because of non-payment of rent . . . and Defendant is not agreeable to paying rent. . . ." Ms. Kreiling admits there was no lease agreement, and it is undisputed that she entered the premises peaceably. "A forcible detainer is where a person enters lawfully or peaceably, and holds unlawfully, and by any of the means enumerated in § 29-18-102 as constituting a forcible entry." Tenn. Code Ann. § 29-18-103. Thus, the Conservator's claim for relief, possession, is clearly based on "forcible detainer" under Tenn. Code Ann. § 29-18-103.

Ms. Kreiling entered the property peacefully; however, after she refused the Conservator's demand for rent, she unlawfully kept possession of the property to the exclusion of the Conservator who had the affirmative duty to utilize the property as an income-producing asset for the benefit of Mr. Sullivan. Accordingly, the appropriate remedy was an action for forcible detainer under Tenn. Code Ann. § 29-18-103.[3]

## II.     SCOPE OF THE CONSERVATORSHIP

Ms. Kreiling contends the Conservator exceeded the scope of his authority in filing an unlawful detainer action because it was against the expressed wishes of Mr. Sullivan and fundamentally changed the character of his estate. We disagree.

"[T]he purpose of a conservatorship is to protect the person and the property of the disabled person, the ward." *AmSouth Bank v. Cunningham,* 253 S.W.3d 636, 641 (Tenn. Ct. App. 2006). Conservators are court-appointed fiduciaries "who act as agents of the court and their rights and responsibilities are set forth in the court's orders." *Id.*

Tennessee Code Annotated § 34-3-107(a)(2) states that the court shall, *inter alia*, "[e]numerate the powers removed from the respondent and those to be vested in the conservator." Therefore, the ward and conservator do not retain the same powers concurrently. The chancery court's order establishing the conservatorship vested the Conservator with the exclusive authority and responsibility to manage and preserve Mr. Sullivan's estate. Moreover, the colloquy between the chancellor and the Conservator's counsel at the hearing on the petition for conservatorship clearly revealed that the court

---

[3] We also note that the General Assembly has provided flexibility for litigants seeking to regain possession of real property. Identical language is found in Tenn. Code Ann. § 29-15-101 (the chapter controlling ejectment actions) and Tenn. Code Ann. § 29-18-106 (the chapter controlling forcible entry and detainer actions). These statutes provide: "Where the action is to recover real property, ejectment, or forcible or unlawful entry or detainer may be brought." Tenn. Code Ann. § 29-15-101, -106. The object of bringing these types of actions is the same: "to afford a speedy, cheap, and expeditious mode of recovering" real property. *Newport Hous. Auth.*, 839 S.W.2d at 89 (quoting *Hopkins v. Calloway*, 35 Tenn. (3 Sneed) 10–12 (1855)).

expected the Conservator to charge rent and, if he did not, then the Conservator would be held accountable.

> MR. BRAGG: . . . I do have one issue. We have – Ms. Kreiling is living in the home.
>
> THE COURT: That's going to be up to –
>
> MR. BRAGG: That's my problem now, I guess.
>
> THE COURT: That's going to be your problem.
>
> MR. BRAGG: Yes, sir.
>
> THE COURT: As to what you charge, if you charge, and if you don't charge – or I shouldn't say you. If the conservator doesn't charge, then I would anticipate he's going to have to somehow explain in an accounting why he is not charging.

As Ms. Kreiling correctly notes, a conservator is responsible for managing the estate to the ward's "best advantage" and preserving the estate "so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it." *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998), *overruled on other grounds by In re Estate of Fletcher*, 538 S.W.3d 444 (Tenn. 2017). Moreover, a conservator "should not change the character" of the ward's property interests "unless the change is necessary to protect and promote" the ward's interests. *Id.* Nevertheless, a conservator has the affirmative duty to act in the best interest of the ward, to protect the assets of the ward, and use them for the benefit of the ward. *AmSouth Bank*, 253 S.W.3d at 641-42. Moreover, a conservator may be discharged if the court determines that the conservator failed to perform its duties and obligations or failed to act in the best interest of the ward. *See* Tenn. Code Ann. § 34–3–108(a).

Contrary to Ms. Kreiling contention that the Conservator fundamentally changed the character of Mr. Sullivan's estate by charging her rent to remain in the house, he made no fundamental change to the estate. The only change was to make the Ashwood Drive property an income-producing asset for the benefit of Mr. Sullivan.

As previously discussed, the Conservator has a fiduciary duty to act in Mr. Sullivan's best interest. *See AmSouth Bank*, 253 S.W.3d at 642. By charging rent, the Conservator is attempting to maintain Mr. Sullivan's estate, rather than fundamentally changing the character of the estate. Therefore, we affirm the decision of the trial court to award possession of the Ashwood Drive property to the Conservator for the benefit of Mr. Sullivan.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Brenda Marie Kreiling.

 

_____
FRANK G. CLEMENT JR., P.J., M.S.