MELOY *v.* NASHVILLE TRUST CO.

(*Nashville,* December Term, 1940.)

Opinion filed. March 8, 1941.

W.. P. COOPER, of Nashville, for complainant.

BASS, BERRY & SIMS, of Nashville, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought by complainant as next friend of a minor, Phil J. Tinsley, against his guardian, the defendant Trust Company, for an accounting and a recovery of an alleged loss of the ward's funds incurred by the guardian in making an unauthorized and unlawful mortgage loan investment of $12,500. The cause was heard. on the pleadings and stipulations and the bill dismissed by the chancellor, who found that the investment was not within the authorized class for a ward's funds when made, but that by the Act of 1931, Chapter 100, the law was changed so as to make investments made in the manner in which this was made lawful, that the act was retroactive to the extent that it operated to cure the defect in the making of this investment, rendering it legal. Complainant appeals.

The Nashville Trust Company, defendant, is the successor to the American Trust Company, which made the investment complained of, and, as such, concedes legal responsibility for any loss growing out of mismanagement by American Trust Company of this ward's funds. The American Trust Company was appointed and qualified as guardian for young Tinsley, succeeding Williamson County Banking & Trust Company, November 26th, 1930, and received thereupon $24,405.77 in cash for its ward's account. It immediately invested $12,500 of this sum by the purchase from itself of a note secured by mortgage on real estate, executed by one Jacobs, dated

April 1st, 1928, and payable in three years. As of April 1st, 1931, the date of its maturity, this loan was renewed and extended by the execution of a new note and mortgage of like amount. When this note fell due it was not paid, and subsequently foreclosure was had by trustee's sale, and the Trust Company, guardian, bought in the property at the price of $10,000 for the ward's account, deeming it to be worth that sum. It is for the loss resulting of principal, interest, taxes, etc., stated in the bill to . be $5,317.59, that recovery is sought from the guardian.

It appears that the allegation was made in answer and the original stipulation that the note dated in 1928 and maturing in 1931, had first been sold by the Trust Company to one H. T. Hill, and that it was from H. T. Hill, then its owner, that the Trust Company purchased it as an investment for this ward's funds, upon the funds coming into its hands. However, it is now conceded that this was error (due, doubtless, to the unfamiliarity of the present guardian, Nashville Trust Company, and its present officials with the facts of the initial transaction), and that the fact is that Hill had re-sold to the American Trust Company this note and loan on October 10th, before its appointment as guardian, on November 26th, and that at the time it was sold to the ward's estate it was the property of and in "the portfolio of" the Trust Company. This error was corrected by an amendatory stipulation on the briefs of counsel in this court. So that, as heretofore stated, we have before us a case in which a guardian has invested its ward's funds in a real estate mortgage loan which it itself owned, having been previously re-sold to it by another party (for what reason does not appear), on which a relatively large loss has resulted, the value of the real estate having proven, upon default in payment of the notes, to be less than the debt.

It further appears, is, indeed, conceded, that the law as it stood upon the making of this investment (whether it be treated as made in November, 1930, or as of the renewal note in April, 1931) was not complied with in making a purchase of an existing, outstanding mortgage note. Code, Section 8496; *Freeman* v. *Citizens' National Bank,* 167 Tenn. 399, 410, 70 S. W. (2d) 25; *Woodard* v. *Bird,* 105 Tenn. 671, 59 S. W. 143.

It thus appears that two definitely distinct difficulties confront the defendant guardian in its effort to justify the course pursued by its predecessor guardian in making this investment of the ward's funds. The first difficulty was the only one presented on the record in the court below, and it was considered and disposed of by the chancellor, as heretofore stated. The second and, in our opinion, more fundamental difficulty was not presented to the chancellor or passed on by him for the reason, as above explained, that it first came into the case by reason of the amended stipulation of counsel made for the first time in this court.

If it be conceded, as held by the chancellor, that the Act of 1931 may be given a curative effect, in so far as the illegality grounded on the investment of the ward's funds in an existing and outstanding mortgage loan is concerned, it can hardly be reasonably contended that anything in the Act of 1931 covers or cures the fundamental illegality of an investment of a ward's funds in a loan owned by the guardian—a purchase from itself. The principle involved and here violated has recently been discussed by this court and authorities cited and reviewed. *Cowan* v. *Hamilton National Bank,* 177 Tenn., 94, 146 S. W. (2d), 359.

It is urged that the guardian acted in good faith and

prudently; that the loan was well secured; that its value was depreciated by subsequent changes and events. Bad faith is not charged. The stipulation does not show that the mortgaged property was appraised at the time the loan was purchased for the ward's estate, but it does show that it had been several times previously appraised at a valuation double the amount of the loan, and that when renewed, as of April 1st, 1931, another appraisal was made by an employee of the Trust Company, who would testify, if called, that it then was of the value of $25,000. But whether or not the loan appeared to be well secured is not determinative. The bill charged that the Trust Company owned it and sold it to itself as guard-ian for the ward, as above shown. The original stipulation, on which the cause was heard by the chancellor, was to the contrary, that when acquired for the ward it was owned by Hill and purchased from him. However, this was corrected on the briefs of counsel in this court, as before stated, to show the fact to be as charged in the original bill, that the Trust Company itself owned the mortgage loan and sold it to itself as guardian for its ward, which was, in effect, a loaning to itself of the ward's funds. Such a transaction is not approved under any conditions.

It can hardly be necessary to cite authorities for the proposition that a guardian may not "loan to himself the moneys of his ward." 25 Am. Jur., at page 129, cites in support of this specific rule, under the general discussion of the "Trust Relation Between Guardian And Ward" (p. 128), among other cases, *Sowers* v. *Pollock,* 112 Kan. 599, 212 P. 103, 30 A. L. R. 458. It was held in that case that such investments were illegal even though attempted to be authorized by a probate court decree,

the court holding that such a decree was void. We quote from page 459 of 30 A. L. R.:

"The court had no more authority to direct or approve a loan of the ward's money by the guardian to himself than he would have had to have directed a loan of the funds to the judge who made the order. His order was of no more effect than if he had authorized the guardian to use it in the purchase of lottery tickets in a bucket-shop deal or in any gambling transaction. In borrowing the ward's money, the guardian became both borrower and lender, relationships in which his personal interest was brought into direct conflict with the interest of the ward, to whom he was bound to protect.

"A principle which has been universally recognized since the beginning was expressed by Lord Ellenborough in *Thompson* v. *Havelock*, 1 Campb. 528, 10 Revised Rep. 744, that 'no man should be allowed to have an interest against his duty.'

"In *Frazier* v. *Jeakins*, 64 Kan. 615, 68 P. 24, 25, 57 L. R. A. 575, it was said: "Nothing in the law of fiduciary trusts is better settled than that the trustee shall not be allowed to advantage himself in dealings with the trust estate. He shall not be allowed to serve himself under the pretense of serving his *cestui que trust.*'"

In the Annotation following the report of this case, *Fidelity & Deposit Co.* v. *Freud*, 115 Md. 29, 80 A. 603, 605, is quoted from at length. We quote a particularly pertinent paragraph: "One of the rules universally recognized as applicable to every fiduciary is that which prohibits him from borrowing the trust funds, 'or going through the form of borrowing, for his own use.' . . . The reason upon which it [the principle] is founded is too obvious to need discussion." The annotator here cites,

among other cases, *Hutson* v. *Jenson*, 110 Wis. 26, 85 N. W. 689, as holding "that an ostensible investment of a guardian by a loan to himself out of the ward's funds, by issuing to each of his wards his own promissory note secured by a mortgage upon real estate, is not an investment at all, no matter how good the security, but leaves the guardian liable for the full amount."

The principles referred to by us in *Cowan* v. *National Bank, supra,* are, if possible, more stringently applied to cases of guardian and ward, than to other classes of trusts. Guardianship is recognized as a "trust of the highest and most sacred character; and the trustee cannot be allowed by law to have any inducement to neglect his ward's interests." 30 Am. Jur., page 128; *Brandau* v. *Greer,* 95 Miss. 100, 48 So. 519, 21 Ann. Cas. 1118. It is likewise generally held that a guardian violates his fiduciary duty in acquiring by purchase, or otherwise, the property of his ward. *Sorrels* v. *Childers,* 129 Ark. 149, 195 S. W. 1, L. R. A. 1917F., 430; *Hindman* v. *O'Connor,* 54 Ark. 627, 16 S. W. 1052, 13 L. R. A. 490; *Winter* v. *Truax,* 87 Mich. 324, 49 N. W. 604, 24 Am. St. Rep. 160; *Daniel* v. *Tolon,* 53 Okl. 666, 157 P. 756, 4 A. L. R. 704; *In re Filardo,* 221 Wis. 589, 267 N. W. 312, 105 A. L. R. 438.

In 28 C. J., page 1154, will be found decisions from some thirty jurisdictions to the effect that a guardian may not "trade with himself on account of his ward," or cannot purchase, or "deal with his ward's property for his own benefit." *Berry* v. *Berry* (Mo. App.), 218 S. W. 691, and *In re Bates' Guardianship,* 70 Okl. 321, 174 P. 743, are cited for the specific holding that a guardian cannot make a loan to himself of his ward's funds, "even on proper security."

█ The material facts of this case are not only undisputed, but stipulated, and show that this investment was one sold by the guardian to its ward from its own assets. To such a transaction these well-settled principles apply, without regard to the good faith of the guardian and its confidence in the investment at the time. When a loss results, as conceded here, it falls upon the guardian. It is true that the particular note and mortgage as to which the default in payment occurred, and on which the foreclosure was had, is not the one sold by the guardian to the ward, but, as above stated, it is quite obviously but a renewal and extension, and this difference is not material, it being essentially the same investment.

The conclusions we have reached on the point above discussed render it unnecessary to consider the question specifically passed on by the chancellor as to the effect of the Act of 1931. The decree must be reversed. We do not find the record in condition to enable us to determine the exact amount of liability. The cause will be remanded for an accounting and reference, and a decree by the chancellor consistent with this opinion.