IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 30, 2015

**IN RE CONSERVATORSHIP OF SCOTT D. MELTON**

**Appeal from the Chancery Court for Anderson County**
**No. 10PB272     Hon. William E. Lantrip, Chancellor**

_____

**No. E2014-01384-COA-R3-CV-FILED-JULY 31, 2015**

_____

In this conservatorship case, East Tennessee Human Resources Agency was appointed as the financial conservator for the ward. The first annual accounting was approved by all parties. The trial court approved the second annual accounting and the subsequent final accounting following the ward's death. The ward's daughter objected and filed numerous other motions challenging the handling of the ward's finances. The trial court denied each motion and closed the conservatorship. The daughter appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Bruce Hill, Sevierville, Tennessee, for the appellant, Marilyn Moore, personal representative for the Estate of Scott Melton.

Robin M. McNabb and William A. Reeves, Knoxville, Tennessee, for the appellee, East Tennessee Human Resources Agency.

**OPINION**

**I.     BACKGROUND**

In November 2010, Marilyn Moore ("Daughter") sought appointment as the conservator of her father, Scott Daniel Melton ("the Ward"). Daughter provided a physician's report, providing that the Ward suffered from dementia and that his ability to process information was impaired. The trial court appointed a guardian ad litem, Harold P. Cousins, Jr. ("Guardian"), who contacted the Ward's three children: David Melton, Timothy Melton, and Daughter. While David Melton did not object to the appointment

of Daughter, Timothy Melton argued that the appointment of a conservator was unnecessary because the Ward's fiancé, Janella Ash ("Wife"),[1] provided daily care. Guardian also met with the Ward on two occasions. In the first meeting, the Ward, who was accompanied by Daughter, did not object to her appointment as his conservator. In the second meeting, the Ward, who was alone, objected to the appointment of Daughter as his conservator. Guardian filed a report in which he asserted that the appointment of a conservator was necessary but that he was unable to determine whether Daughter was the proper party to serve in that capacity.

The Ward filed an answer in which he objected to the Daughter's appointment and alternatively requested the appointment of Wife as his conservator. The Ward suspected that Daughter misappropriated his funds and only filed the conservatorship action because she feared the loss of her inheritance as a result of his intent to remarry. The Ward and Wife enjoyed a loving relationship for the past 10 years, and his children knew of his intention to remarry so long as his first wife predeceased him. Despite divorcing approximately 30 years ago, the Ward's faith prevented remarriage while his first wife was still living. His first wife died days prior to the filing of the petition for a conservator.

On February 2, 2011, the trial court appointed Carol Silvey ("Conservator") of East Tennessee Human Resources Agency, Tennessee Commission on Aging, as the Ward's financial conservator. The order provided, in pertinent part, as follows:

> [Conservator] shall file an inventory and proposed property management plan and spending plan within 60 days of the entry of this Order. The Court finds that [Conservator's] blanket bond is sufficient surety and no further bond is required.
>
> [Daughter] and Corey Moore shall be free to visit with [the Ward] without interference. [Wife], by signing this Order submits to the jurisdiction of the court and agrees not to remove [the Ward] from the state for more than 45 days every 6 months. If [the Ward] should become hospitalized while out of state [Daughter] shall have the right to visit with him in the hospital, and [Wife] agrees to arrange for his transport back to Tennessee if it is medically feasible.
>
> The rights of the Ward removed from the Ward and vested in [Conservator] include the right to dispose of property, execute instruments, including a last will, make purchases, enter into contractual relationships, investigate,

---

[1] The Ward and Ms. Ash married on November 19, 2010.

institute and prosecute litigation on the Ward's behalf; and the right to perform any other act relating to the Ward's estate deemed necessary by [Conservator] to be necessary or advisable.

Conservator filed an inventory report of assets, liabilities, and income on June 30, 2011. The report was later amended on December 5, 2011. Conservator noted that Timothy Melton owned and operated a business previously established by the Ward and provided the Ward with a weekly salary and health insurance from the business. Conservator also noted that the Ward provided Daughter with a 1% undivided interest in his property and verbally conveyed the rental income from his commercial property to her in return for her agreement to remit payment for operating expenses, including insurance and taxes. The Ward's assets, as amended, were as follows:

1.    Indebtedness from Timothy Melton in the approximate amount of $72,000.

2.    99% undivided interest in two parcels of real estate, and 100% undivided interest in one parcel of real estate. The combined value of the three properties was $576,300 for property tax purposes. The properties were also subject to a mortgage debt at ORNL FCU of approximately $25,000.

3.    Certificate of Deposit at Enrichment Federal Credit Union, in account . . . titled to [Daughter], balance . . . of $40,691.48.

4.    Joint checking account with [Wife] at Peoples National Bank [] with balance . . . of $3,519.73.

5.    Account at Enrichment Federal Credit Union [balance of] $870.92 on May 31, 2011.

6.    Account at Enrichment Federal Credit Union [balance of] $7,418.22 on April 30, 2011.

Conservator listed the Ward's liabilities as follows:

1.    [Conservator] is advised that [the Ward's] residence is encumbered by a Deed of Trust in favor of ORNL Federal Credit Union, to secure a loan made to his son, Timothy Melton, with a balance of indebtedness of approximately $25,000, and that Timothy Melton is currently . . . making payments. No documentation has been located regarding this liability.

2.     It appears that [Daughter] has not complied with the conditions of [the Ward's] gift to her of the net monthly rental income from his property, in that she has caused recent property tax and insurance payments to be made from [his] funds, rather than from the rental income she has been receiving.

Conservator listed the Ward's income as follows:

[The Ward's] income is derived from his salary/loan repayment funds he receives from Timothy Melton, and/or Melton Heating and Air Conditioning, Inc. ($800.00/week); from Social Security ($1,695.00/month); and from small pension/retirement accounts ($175.00/month).  His disposable income for 2009 was approximately $44,000.00, based upon an analysis of his IRS return.

Conservator expressed concern that the Ward's income may become insufficient for his needs if the informal agreements with Timothy Melton and Daughter were not honored. Conservator provided the following recommendations:

1.     That Timothy Melton sign documentation evidencing his loan repayment agreements to [the Ward] and to ORNL FCU.

2.     That [Daughter] transfer the balance of funds at EFCU . . . to [Conservator's] Trust account.

3.     That Timothy Melton resume payments of $800.00 per week to [the Ward], plus maintaining his health insurance coverage, in addition to maintaining his loan repayment schedule.

4.     That [Daughter] provide a complete accounting for the income and expenses received and paid by her for the [commercial] property, and agree to pay all related taxes, insurance and maintenance from its income.

The record reflects that Timothy Melton failed to provide the requested documentation; however, Daughter returned the funds she had converted into a certificate of deposit titled in her name.

On February 21, 2012, Daughter filed a motion for contempt, alleging that Wife was in Florida with the Ward and had not returned within 45 days as agreed in the order of conservatorship.  The matter was referred to mediation, which was ultimately

unsuccessful. During the pendency of the motion and amidst a flurry of litigation, Daughter also sought appointment as the Ward's personal conservator. The contempt motion and subsequent petition for appointment were later dismissed as a result of the Ward's death on June 24, 2013.

On July 30, 2012, prior to the Ward's death, Conservator filed the first annual accounting, which was approved by all parties. The first accounting reflected that Conservator received $56,889.44 and disbursed $21,622.03. The first accounting reflected an ending balance of $35,267.41 in the trust account and $9,412.98 in a separate account. Conservator filed the second annual accounting on April 2, 2013, and the final accounting on September 4, 2013. The second accounting reflected that Conservator received $19,997.99 and disbursed $43,216.45. The second accounting reflected an ending balance of $12,048.94 in the trust account and $32,534.43 in a separate account. The third and final accounting reflected that Conservator received $8,445.02 and disbursed $9,180.03. The accounting reflected an ending balance of $11,313.94 in the trust account and $34,197.78 in a separate account. These accountings were approved by the trial court on September 17, 2013. Conservator also requested attorney fees in the amount of $6,360.18.

Daughter objected to the approval of the final accounting and asserted that the requested attorney fees were for matters unrelated to the Ward's finances. Daughter asserted that Conservator had acted without letters of conservatorship, had failed to submit a property management plan, and had abdicated its responsibility to the Ward by remitting funds directly to him. These concerns were dismissed by the trial court.

Daughter then filed a motion to clarify the approval of the final accounting in which she requested a ruling on her objection to the attorney fee request. She also filed a complaint in Knox County Chancery Court against Conservator. The complaint was ultimately dismissed on the doctrine of prior suit pending. Thereafter, Daughter filed a motion to amend her prior motions and objections in Anderson Chancery Court. She reasserted her original concerns that Conservator had acted without letters of conservatorship, had not filed a property management plan, and had abdicated its responsibility to the Ward by remitting funds directly to him. Daughter sought damages in the amount of $222,746.41, pre-judgment interest, and attorney fees. In response, Conservator requested an order closing the conservatorship and granting its request for attorney fees in the amount of $16,870.05, reflecting the pending request of $6,360.18 and an additional amount of $10,509.87 as a result of the Knox County litigation and the current defense of the final accounting and management of the Ward's finances.

Following a final hearing on all pending motions, of which there were many, the trial court denied Daughter's motions, closed the conservatorship, and awarded Conservator attorney fees in the amount of $6,360.18. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.     Whether Conservator breached its fiduciary duty to the Ward by mismanaging the estate and operating without authority.

B.     Whether the trial court erred in setting the amount of attorney fees awarded to Conservator.

C.     Whether Conservator is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).[2] We afford great deference to a trial court's credibility determinations because the trial court is in the best position to observe witnesses and evaluate their demeanor. *Hughes v. Metro. Govt. of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

## IV. DISCUSSION

### A.

"A conservator occupies a fiduciary position of trust of the highest and most sacred character." *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (citing *Meloy v. Nashville Trust Co.*, 149 S.W.2d 73 (Tenn. 1941)). The conservator is tasked with managing the estate to the ward's "best advantage" and preserving the estate for the ward in the event that the ward recovers. *Id.* Conservators "are appointed to act in the best interests of the disabled adult person for whom they are partially or fully responsible in

---

[2] Daughter claims that a trial court's findings of fact should be reviewed de novo *without* a presumption of correctness in conservatorship cases when the final accounting is challenged. Having reviewed the applicable law, we disagree and review the trial court's findings of fact de novo *with* a presumption of correctness unless the preponderance of the evidence is otherwise.

the discretion of the court." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006). The trial court "must specifically '[e]numerate the powers removed from the respondent and vested in the conservator.'" *In re Conservatorship of Groves*, 109 S.W.3d 317, 331 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 34-3-107(2)). "Any power not specifically vested in the conservator remains with the person for whom the conservator has been appointed." *Id.* Additionally, "[t]he authority, rights and responsibilities of a conservator are not independent of the court." *Cunningham*, 253 S.W.3d at 642. The conservator must "'act as the court's agent'" and may be discharged "if the court determines that the conservator has failed to perform its duties and obligations, or if the court determines the conservator has failed to act in the ward's best interest so as to warrant modification." *Id.* at 642-43 (quoting *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995)).

Daughter raises various issues relating to Conservator's management of the estate. She claims that the trial court should not have approved the accountings or closed the conservatorship in light of Conservator's menial efforts in protecting the Ward's assets. As a threshold response, Conservator asserts that any issues regarding the management of the estate as reflected in the three accountings are waived. Conservator notes that Daughter signed the first accounting and failed to timely object to the entry of the other two accountings. Despite the claim to the contrary, "[t]here is nothing in the statutes governing conservatorships that indicates either that an annual accounting, when approved by the court, is 'final' for purposes of appeal or that, once approved, an annual accounting cannot be revisited prior to the entry of the order closing the estate." *Estate of Miller v. Rice*, No. M2011-02152-COA-R3-CV, 2012 WL 3655244, at *2 (Tenn. Ct. App. Aug. 24, 2012) (holding that claims relating to the conservatorship were waived in the subsequent probate proceeding because petitioner failed to either raise the issues in the conservatorship proceeding or timely appeal the final order closing the conservatorship). Issues relating to Conservator's management of the Ward's estate are not waived because Daughter raised these issues prior to the closing of the conservatorship and timely filed a notice of appeal following the entry of the final order. Accordingly, we will address each issue in turn.

Daughter argues that Conservator acted without approval and is liable for waste because Conservator never obtained letters of conservatorship. Tennessee Code Annotated section 34-1-109(a) provides, in pertinent part, as follows:

> On the entry of an order appointing the fiduciary, the administration of the oath as provided in subsection (b) and the posting of any required bond, the fiduciary's appointment becomes effective. The only effective *evidence* of appointment shall be duly issued letters of guardianship or conservatorship.

(Emphasis added).  Daughter cites numerous cases in which private companies were held liable for remitting payment to guardians or conservators that did not have duly issued letters of guardianship or conservatorship.  These cases further illustrate that the letters of conservatorship serve as the only effective *evidence* of the appointment.  These cases do not establish that the conservator is liable for operating the conservatorship without letters of conservatorship.  Indeed, the statute also specifically provides as follows:

> Except for violations of § 39-14-101, the fiduciary shall have no liability for any act done pursuant to the order appointing the fiduciary between the date of the entry of the order and the date of the vacation of the order if the order is set aside on appeal.

Tenn. Code Ann. § 34-1-109(a).  Daughter has not alleged that Conservator committed theft pursuant to Tennessee Code Annotated section 39-14-101 or that Conservator acted beyond the scope of the order establishing the conservatorship.  This issue is without merit.

Daughter argues that the expenditures made on behalf of the Ward should be set aside because Conservator failed to provide a property management plan for the court's approval.  Conservators are tasked with submitting a property management plan "for the investment and management of the property of a minor or disabled person."  Tenn. Code Ann. § 34-1-101(15).  Tennessee Code Annotated section 34-1-115(b) provides as follows:

> Except as provided in subsection (d), at the hearing for the appointment of a fiduciary, the proposed fiduciary shall present an outline of the proposed property management plan for the respondent's property.  If the proposed property management plan cannot be presented at the appointment hearing, *the fiduciary shall submit the proposed property management plan to the court for approval before any property is invested*.  The purpose of the property management plan is to advise the court of the general type of property in which the respondent's property will be invested so the court will be assured the fiduciary will be making approved investments.  The plan need not detail the individual asset or assets.  For example, if the fiduciary plans to invest in certificates of deposit, the plan need only make that statement.  It is not necessary to identify the individual institution or institutions whose certificates will be purchased.

(Emphasis added).  The record reflects that Conservator never sought to invest the Ward's property.  Thus, Conservator was not required to submit a property management plan.  This issue is without merit.

Daughter argues that Conservator mismanaged the Ward's estate by disbursing money directly to the Ward. Daughter notes that Conservator disbursed $46,179.78 in checks made payable to the Ward throughout the conservatorship. Daughter posits that these funds were likely used for Wife's benefit and should not have been disbursed to the Ward when his ability to manage his finances was impaired. A review of the record reveals that each check remitted was documented and categorized as a necessary expense. Granted, some checks were remitted to the Ward for unspecified "household expenses" or "personal funds." However, Daughter does not provide any relevant legal authority to establish that Conservator mismanaged the estate by providing the Ward with monthly allotments for his expenses. Daughter also does not present any evidence to establish that these funds were not used for the Ward's benefit or were not necessary to sustain the Ward. This issue is without merit.

Daughter argues that Conservator mismanaged the estate by cashing a certificate of deposit and depositing the funds into the Ward's checking account. Daughter notes that these funds were later remitted to the Ward through various checks made payable to him. Daughter claims that Conservator violated Tennessee Code Annotated section 34-1-115(c) by changing the nature of the Ward's investment without court approval. Conservator responds that Daughter used the Ward's money to open a certificate of deposit titled in her name. Conservator claims that she instructed Daughter to return the funds and that she then deposited the funds into the Ward's account when Daughter complied. The record supports Conservator's explanation for the transfer of the funds. Thus, Conservator did not violate Tennessee Code Annotated section 34-1-115(c) because the funds were never invested by the Ward. Conservator merely recovered funds that had been unlawfully converted by Daughter. This issue is without merit.

Finally, Daughter argues that Conservator mismanaged the estate by failing to collect the debt owed by Timothy Melton and by allowing him to remit payment directly to the Ward. The record reflects that Conservator documented the debt owed by Timothy Melton and advised the parties to reduce the obligation to writing. Daughter does not present any relevant legal authority in support of her argument that Conservator should have pursued further action in recovering the debt. This issue is without merit.

### B. & C.

Conservator argues that the trial court erred in setting the amount of attorney fees at trial. Conservator requests attorney fees in an amount sufficient to reflect her defense of the management of the Ward's finances at trial and now on appeal pursuant to Tennessee Code Annotated section 34-1-113. Daughter responds that any issue regarding the award of attorney fees at trial is not properly before this court because Conservator

did not appeal the court's judgment. Daughter alternatively responds that the court did not err in reducing the amount of attorney fees sought by Conservator.

Despite the claim to the contrary, Conservator's attorney fee award is properly before this court because this issue was addressed by the trial court and raised by Conservator in the appellate brief. Tenn. R. App. P. 13(a).[3]

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor*, 158 S.W.3d at 359; *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998)). "[A]s a general principle, the American [R]ule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008). However, "[w]here attorney fees are authorized by law, then the decision to award such fees is within the sound discretion of the trial court, and will not be reversed on appeal, absent abuse of that discretion." *Martin v. Moore*, 109 S.W.3d 305, 313-14 (Tenn. Ct. App. 2003) (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996)).

Tennessee Code Annotated section 34-1-113 provides, in pertinent part, as follows:

> (a)    The fiduciary is entitled to pay from the property of the minor or person with a disability the costs of any . . . attorney fees . . . for which the minor or person with a disability is obligated and such other expenses as the court determines are necessary for the fiduciary. The fiduciary shall not pay any attorney fee, guardian ad litem fee, fees for income tax preparation and court accountings or investment management fees until the amount of those fees is approved by the court.

* * *

---

[3] "Except as otherwise provided in Rule 3(e), any question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required. Dismissal of the original appeal shall not preclude issues raised by another party from being considered by an appellate court."

(b)     For purposes of subsection (a), attorney fees shall include fees for preparing fiduciary fee applications and other related filings that are required to be submitted to the court including petitions to secure approval or reimbursement for any expenses paid by the fiduciary that meet the requirements of this section, provided that the amount of those fees is determined by the court to be reasonable in view of the services rendered.

The record reflects that a portion of Conservator's requested attorney fees were not incurred on behalf of the Ward. Conservator requested attorney fees for services rendered from September 2013 until May 2014, a period in which the Ward was no longer living. Conservator argues that an award of attorney fees at trial and on appeal is appropriate when she was successful in defending the final accounting. Conservator analogizes the current case to the situation presented in *Pitts v. Blackwell*, No. M2000-01733-COA-R3, 2001 WL 1660829, at *6 (Tenn. Ct. App. Dec. 28, 2001), where this court held that the conservator was *not* entitled to an award of attorney fees because the conservator was unsuccessful in defending the final accounting. 2001 WL 1660829, at *6. In so holding, the court relied upon the reasoning *In re Estate of Wallace*, 829 S.W.2d 696, 704 (Tenn. Ct. App. 1992), where the court held that an executor of an estate may charge its necessary and reasonable legal fees against the estate only when the executor is successful in defending its conduct. *Pitts*, 2001 WL 1660829, at *6.

Tennessee Code Annotated section 34-1-113(a) provides that a fiduciary may recoup legal fees incurred on behalf of the ward and "such other expenses as the court determines are necessary for the fiduciary." Exercising its discretion, the trial court only approved the amount of attorney fees that it determined was "reasonable and necessary" and expended on behalf of the Ward. We uphold the trial court's discretionary decision. Exercising our discretion in such matters, we deny the request for attorney fees on appeal.

Conservator also claims that she is entitled to an award of sanctions from Daughter in the form of attorney fees on appeal because Daughter's appeal is frivolous. Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Exercising our discretion, we respectfully deny the request for attorney fees on appeal.

# V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Marilyn Moore, personal representative for the Estate of Scott Melton.

_____
JOHN W. McCLARTY, JUDGE