# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 15, 2015 Session

## IN RE CONSERVATORSHIP OF FRANK S. KING, JR.

**Appeal from the Chancery Court for Williamson County**
**No. C6815      Timothy L. Easter, Chancellor**

_____

**No. M2014-01207-COA-R3-CV – Filed August 6, 2015**

_____

At issue in this conservatorship action is the amount and type of support the spouse of a ward is entitled to receive from the ward's estate pursuant to Tenn. Code Ann. § 34-3-109, which authorizes the court to "establish the amount of financial support to which the spouse . . . [is] entitled." The ward's son and step-son from a previous marriage filed a petition for the appointment of a conservator; the ward's wife opposed the conservatorship. A conservatorship was created, and the court appointed third-party conservators for the ward's estate and person. Thereafter, the wife requested over $19,250 per month as spousal support, which included attorney's fees she incurred in the trial court proceedings. At the court's request, she filed statements of her expenses over a twelve-month period preceding the appointment of the conservator. The petitioners opposed her request contending it was excessive and that her separate assets should be considered in awarding support. After excluding "outlier" expenses that were significantly larger than her average monthly expenses and the attorney's fees the wife sought to recover as miscellaneous expenses, the trial court awarded spousal support of $9,010 per month. Petitioners and the wife appeal. Petitioners contend the award was excessive. The wife contends the court erroneously excluded bona fide expenses including, particularly, the attorney's fees she incurred in these proceedings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Winston S. Evans and R. Francene Kavin, Nashville, Tennessee, for the appellant, Sheila G. King.

Ames Davis, Christopher A. Wilson, and Joseph Addison Woodruff, Nashville, Tennessee, for the appellees, Frank S. King, III, and M. Wesley Hall, III.

William L. Harbison and John L. Farringer, IV, Nashville, Tennessee, for the appellee, Regions Bank.

## OPINION

Frank S. King, III ("Buddy King") and M. Wesley Hall, III, are the son and step-son of Frank King, Jr., from a prior marriage.[1] In January 2013, Buddy King and Wesley Hall ("Petitioners") filed a Petition for the Appointment of a Conservator for Frank King, Jr., who was in declining health. Sheila King, who had been married to Mr. King for approximately thirty years, filed a response opposing the petition; in the alternative, she requested to be named conservator for her husband if a conservatorship was necessary.

The petition came on for trial before the Clerk and Master of Williamson County who was authorized and empowered to adjudicate conservatorship actions subject to review by the chancellor.[2] *See* Tenn. Code Ann. § 16-16-201(b). At the commencement of the trial, the parties stipulated that Mr. King was disabled and in need of protection by the court. After independently confirming the need for a conservatorship, the Clerk and Master ("the Master") appointed Elder Options Care Consultants, LLC, as conservator for the person of Mr. King, and Regions Bank as conservator for his estate, which totaled approximately $6.5 million.[3]

In the order creating the conservatorship, the Master ordered Mrs. King to file a proposed expense statement itemizing her personal and household expenses "to guide the court in determining the amount of funds that should be made available to Mrs. King for

---

[1] Their mother died in 1972.

[2] Pursuant to Tenn. Code Ann. § 16-16-201(a), "In all counties where not otherwise specifically provided by public, private, special or local acts, all jurisdiction relating to . . . the administration of estates of every nature, including . . . conservatorships and related matters previously vested in the county court, the county judge or county chair, is vested in the chancery court of the respective counties." Pursuant to Tenn. Code Ann. § 16-16-201(b), "The clerk and master in such counties shall be authorized and empowered to . . . appoint guardians and conservators [and] receive and adjudicate all claims . . . . All action taken by the clerk and master shall be subject to review by the chancellor by simple motion, petition or the filing of exceptions as may be appropriate."

[3] There is a statutory order of priority of persons the court is to consider when selecting a conservator; however, the order of priority is subject to the court's determination of "what is in the best interests of the [person with a disability]." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006); *see also* Tenn. Code Ann. § 34-3-103. The statutory order of priority is as follows: (1) the person(s) designated in a writing signed by the person with a disability; (2) spouse; (3) adult child; (4) closest relatives; and (5) other persons as set forth in Tenn. Code Ann. § 34-3-103. The conservators appointed in this case are not challenged in this appeal.

spousal support." The Master also ordered Regions Bank to fund Mrs. King's day-to-day expenses pending final approval of her spousal support.

Mrs. King filed an expense statement on September 11, 2013, in which she requested $19,250 per month, which included $12,000 per month in household expenses and $7,250 per month in personal expenses. Petitioners objected and requested more detailed information from Mrs. King before the Master set spousal support. The Master ordered Mrs. King to supplement her expense statement with spreadsheets showing actual expenses pertaining to the marital home and personal expenses incurred during the past twelve months, as well as an affidavit stating her personal income from sources other than her husband.

Mrs. King complied by filing a summary of expenses for the twelve-month period from October 2012 through September 2013 and an affidavit stating that her total yearly income from other sources totaled $21,759. The summary of expenses averaged $25,384 per month, which included $6,410 per month for Mr. King's caregivers and medical expenses, $5,345 a month for Mrs. King's medical and personal expenses, which included health and beauty aids as well as clothing and miscellaneous, and $13,628 a month for joint expenses which included home and lawn maintenance, medical insurance and expenses, automobile and gas, utilities, groceries, taxes, and dining out.

Regions Bank filed a response in which it recommended that it be allowed to pay directly the costs for Mr. King's caregivers and income taxes, and, therefore, that these costs be deducted from the expenses requested by Mrs. King. The bank also proposed a spousal award of $13,145 per month, which was based upon the monthly averages of Mrs. King's documented expenses excluding what the bank described as "outlier" expenses that were nonrecurring, such as Mrs. King's attorney's fees. The specific "outlier" expenses were as follows: (i) $14,700 for "joint/home" in July 2013 that was mostly for a one-time alarm system upgrade; (ii) $3,859 for "joint/auto" in August 2013 that amounted to almost half of the yearly total; (iii) $5,755 for "joint/miscellaneous" in August 2013 that would be almost one-third of the yearly total and appeared largely to be payments to Mr. King's caregivers and a court reporter; and (iv) $14,589 for "Mrs. King/miscellaneous" in August 2013 that appeared to be largely for attorney's fees.

Prior to Mrs. King filing a response, the conservator of the person of Mr. King filed a motion to move Mr. King into an assisted living facility, and the court granted the motion. With Mr. King having moved out of the marital residence, the bank, as conservator of the estate, was ordered to pay all of Mr. King's expenses.

Mrs. King responded by filing an amended request for spousal support, in which she requested $17,088 per month for normal and recurring expenses, additional amounts for unusual and non-recurring expenses as they occur, and additional amounts for her legal fees as incurred. The bank agreed to some of the expenses as itemized by Mrs. King

but objected to others. Additionally, Petitioners opposed Mrs. King's latest request arguing, in addition to the points made by the bank, that her personal wealth and separate income should be considered in setting reasonable support, insisting that her need for support is not as great.

In response to the above objections, Mrs. King filed a Statement of Financial Assets revealing that her separate assets totaled $1 million and monthly income from her separate assets totaled $1,813.27 a month. She additionally filed a Supplemental Memorandum in Support of her request for spousal support stating that her separate assets should not be considered in setting spousal support.

In its final response to Mrs. King's request for support of $17,088 per month, the bank recommended spousal support be awarded in the net amount of $9,530.73 per month. This sum was based on the bank's determination that her reasonable recurring expenses totaled $11,344.00 per month, which should be reduced by $1,813.27, the average monthly income Mrs. King received from her separate assets.

Following a hearing on February 24, 2014, the Master awarded spousal support of $9,010 per month noting, in pertinent part, that it "considered the previous standard of living prior to the appointment of a conservator, the financial status and assets of the spouse, and the actual expenses incurred previous to the appointment and how those expenses were paid." The Master also noted that, throughout the marriage, Mr. King paid the parties' personal and household expenses from his separate assets and income and that Mrs. King's separate assets were not used to pay expenses. In making its determination of average monthly expenses, the Master excluded from Mrs. King's expense statement certain expenses that were abnormally high ("outliers") for which Mrs. King had no explanation.[4] The Master awarded, *inter alia*, $163 for automobile and gas; $1,169 for miscellaneous household expense; $291 for health and beauty aids; and $190 for personal miscellaneous expenses, but denied any award for Mrs. King's attorney's fees.

The Master also ordered the bank to directly pay several of the expenses that had been included in Mrs. King's spreadsheets, including joint income taxes, city and county real estate taxes, and health, automotive and homeowner's insurance premiums.

---

[4] In fairness to Mrs. King, several of these expenses were incurred more than a year prior to the hearing, the details of which may have been attended to by others, and she simply could not recall what all of them were for. Moreover, the record indicates that the Master credited this to a bona fide lack of memory, and not an attempt to evade the question.

Mrs. King filed an objection to the Master's Report and Recommendations. The Chancellor adopted and confirmed the Master's ruling in all respects. This appeal followed.

Petitioners and Mrs. King appeal contending the trial court erred by considering or failing to consider certain facts or factors in its award of spousal support. Petitioners contend the trial court erred by failing to consider Mrs. King's separate assets and income in determining the amount of support. Mrs. King contends the award is deficient because it is not commensurate with her previous standard of living. She also contends the court erred in refusing to include her attorney's fees as miscellaneous expenses. The bank, acting in its capacity as conservator of the estate of Mr. King, filed an appellee's brief stating that the award of support was a discretionary decision and it should be affirmed because there was no abuse of discretion.

## STANDARD OF REVIEW

Trial courts are accorded "wide discretion in determining matters of spousal support," and the appellate courts review such determinations pursuant to the deferential abuse of discretion standard. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). As the Tennessee Supreme Court recently stated in its decision in *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010):

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly

supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Medical*, 312 S.W.3d at 524-25 (internal citations omitted).

To the extent the parties challenge the trial court's findings of fact in this appeal, we are obliged to abide by another deferential standard of review. This is because the Master made numerous and detailed findings of fact, all of which were adopted by the Chancellor. In circumstances where we have concurrent findings of fact by a master and a chancellor, the findings of fact cannot be disturbed by the appellate court. Tenn. Code Ann. § 27-1-113. As this court explained:

A concurrent finding of fact of the master and chancery court is conclusive on appeal as to those facts, having the same force and effect of a duly-approved jury verdict, except where the finding is on an issue not appropriate for referral, where it is based on error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence. Thus, we must affirm the concurrent findings of the master and chancery court if there is any material evidence supporting them. Our review of the trial court's conclusions of law is de novo, with no presumption of correctness.

*In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (internal citations omitted).

For the reasons explained above, the trial court's findings of fact are conclusive in this appeal. *Id*. However, this standard of review does not apply to conclusions of law or mixed questions of fact and law. *Id*.

## ANALYSIS

We begin our analysis by noting that the purpose of a conservatorship is to *protect* the person and the property of a person with a disability, the ward of the

conservatorship.[5] *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 641 (Tenn. Ct. App. 2006) (emphasis added). A conservator occupies a fiduciary position of trust of the highest and most sacred character. *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (citing *Meloy v. Nashville Trust Co.*, 149 S.W.2d 73 (Tenn. 1941)). Although the conservator plays a most important fiduciary role, "the court itself is ultimately responsible for the disabled persons who come under its care and protection." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) (citing *Hinds v. Buck*, 150 S.W.2d 1071, 1072 (Tenn. 1941); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991)). The conservator has the affirmative duty to act in the best interest of the ward, to protect the assets of the ward, and use them for the benefit of the ward. *See* Tenn. Code Ann. § 34-3-108(a) (stating that a conservator may be discharged if the court determines that the conservator has failed to perform its duties and obligations or failed to act in the best interest of the ward).

The creation of a conservatorship, however, does not relieve the ward or his estate of his financial responsibilities. *See* Tenn. Code Ann. § 34-3-109. Particularly, "[t]he appointment of a conservator for a person with a disability does not automatically terminate the duty of the person with a disability to support such spouse or dependent minor children of the person with a disability." *Id.* The statute goes on to state: *"[t]he court having jurisdiction over the person with a disability may establish the amount of financial support to which the spouse or dependent minor children are entitled." Id.* (emphasis added).

None of the parties to this appeal challenge the fact that Mrs. King, as the spouse of a ward with substantial assets, is entitled to financial support pursuant to Tenn. Code Ann. § 34-3-109. The issues on appeal pertain to the factors to be considered in making an award, the type of expenses that are appropriate for reimbursement, and the amount of support she is entitled to receive for certain categories of support and in total. We begin

---

[5] A "'[c]onservatorship' is a proceeding in which a court removes the decision-making powers and duties, in whole or in part, in a least restrictive manner, from a person with a disability who lacks capacity to make decisions in one or more important areas and places responsibility for one or more of those decisions in a conservator or co-conservators." Tenn. Code Ann. § 34-1-101(4)(B) (2013). "'Conservator' or 'co-conservators' means a person or persons or an entity appointed by the court to exercise the decision-making rights and duties of the person with a disability in one or more areas in which the person lacks capacity as determined and required by the orders of the court." Tenn. Code Ann. § 34-1-101(4)(A) (2013). "'Person with a disability' means any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(13) (2013). The threshold question in a conservatorship proceeding is whether the respondent for whom a conservator is sought is a "disabled person" as that term is defined in Tennessee Code Annotated § 34-1-101. *See In re Conservatorship of Groves*, 109 S.W.3d 317, 330 (Tenn. Ct. App. 2003). Notably, the term "disabled person" was replaced throughout the statute by amendment in 2013 with the term "person with a disability." *See* 2013 Tenn. Pub. Acts, ch. 435, § 3.

our analysis by noting that neither Tenn. Code Ann. § 34-3-109 nor any other section within the conservatorship statutory scheme identify the factors that are to be considered in establishing the appropriate amount of financial support Mrs. King may receive.

Petitioners contend the amount awarded should be reduced because the court failed to take into consideration Mrs. King's separate assets. Specifically, they contend separate assets and income should be considered in setting support for the spouse of the ward in a conservatorship proceeding just as Tenn. Code Ann. § 36-5-121(i) requires that it be considered when awarding support for a spouse in the form of alimony in a divorce proceeding. For her part, Mrs. King contends the award is deficient because it fails to provide support that is commensurate with her prior standard of living and without regard to her separate assets or income. She specifically contends the court erred by reducing her requests for certain categories of expenses and by denying all of the attorney's fees she incurred in seeking spousal support, which she classified as "miscellaneous expenses." The bank, acting in its capacity as conservator of the estate of Mr. King, contends the award should be affirmed.

In making the award, the Master correctly noted that Tenn. Code Ann. § 34-3-109 "is silent as to what the court must consider," and explained that she considered the following in making the award: "In reaching the amount of support to be paid, this Court has considered the previous standard of living prior to the appointment of a conservator, the financial status and assets of the spouse, and the actual expenses incurred previous to the appointment and how those expenses were paid."

Our analysis of this issue begins with a determination of the relevant factors to be considered when a court is called upon to determine, pursuant to Tenn. Code Ann. § 34-3-109, whether to award spousal support and, if so, the amount of support a spouse is entitled to receive from the ward's estate. We have already stated that Tenn. Code Ann. § 34-3-109 does not identify factors to consider nor does any other section within the conservatorship statutory scheme. Thus, we turn our attention to the area of law where spousal support, in one form or another, has been a part of our legal system for centuries. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 106 (Tenn. 2011). As our Supreme Court explained in its historical review of the framework for spousal support in *Gonsewski*: prior to 1857, English ecclesiastical courts could grant spousal support while "the marriage bond remained undissolved."[6] *Id.*

---

[6] During this time, the ecclesiastical courts "could grant divorces *a mensa et thoro*, known today as a divorce from bed and board or legal separation." *Gonsewski*, 350 S.W.3d at 106 (citing *Wood v. Wood*, 407 A.2d 282, 286 n.3 (Me. 1979); 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 17.1 (2d ed. 1987) (*"The Law of Domestic Relations"*). As the court explained, "These courts would grant the wife alimony under the theory that, because the marriage bond remained undissolved, but the spouses were authorized to live apart, the husband's duty to support his family

(continued…)

Our Supreme Court then acknowledged, once the early cases resolved threshold questions related to the type of divorce for which spousal support could be ordered and the form such an award could take, that courts began to focus on the amount to award and the length of time it should be paid. *Id*. By the 1930s, Tennessee courts recognized there were "no hard and fast rules governing the amount of alimony," and that "specific factors were to be considered in determining the appropriate amount." *Id*. (citing *Walden v. Walden*, 13 Tenn. App. 337, 344 (Tenn. Ct. App. 1930)). Our Supreme Court elaborated:

> These factors included the value of the separate property owned by the spouses, their age, income, "station in life," as well as the "way and manner in which the [marital] estate has been accumulated and contributions made thereto" by the parties. . . . The parties' standard of living could be considered as well.

*Id*. at 107 (internal citations omitted). The court then discussed a type of spousal support, alimony in futuro, that was appropriate when "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." *Id*. (quoting Tenn. Code Ann. § 36-5-121(f)(1)). The court explained that this type of support was appropriate when "the disadvantaged spouse [was] unable to achieve, with reasonable effort, an earning capacity that [would] permit the spouse's standard of living . . . to be reasonably comparable to the standard of living the couple [had been enjoying] . . . or the standard . . . available to the other spouse. *Id*. (quoting Tenn. Code Ann. § 36-5-121(f)(1)). The court further noted that such support "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse," and noted, in most cases, "it is unlikely that both parties will be able to maintain their [previous] lifestyle . . . ." *Id*. at 108 (citations omitted).

In determining whether to award spousal support and, if so, determining the nature, amount, length, and manner of payment, the Court identified several factors that should be considered, to the extent relevant:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

---

continued unabated." *Id*. (citing *Swan v. Harrison*, 42 Tenn. (2 Cold.) 534, 541 (1865); *The Law of Domestic Relations* § 17.1). "Only Parliament could grant an absolute divorce until 1857 when this authority, along with the jurisdiction of the ecclesiastical courts, was placed in a secular divorce court." *Id*. at 106, n.6 (citing *Wood*, 407 A.2d at 286 n. 3; *The Law of Domestic Relations* § 17.1).

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

*Id.* at 109-10 (citing Tenn. Code Ann. § 36-5-121(i)). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at 110 (citations omitted).

We are mindful that Mr. and Mrs. King's marriage remains intact, and there is no expectation that it will be dissolved by any court; nevertheless, we have determined that the above factors, to the extent relevant, should be considered in determining whether the

spouse of a ward is entitled to receive support from the ward's estate and, if so, in what amount.

The issues raised by the parties in this appeal invoke three of the factors identified in *Gonsewski*: factor (1) the obligations, needs, and financial resources of each spouse, including income from all sources; factor (7) the separate assets of each party; and factor (9) the standard of living the parties established during the marriage. Another issue raised by the parties - whether Mrs. King is entitled to recover her attorney's fees - does not fall within the purview of these factors and that issue will be addressed separately.

As we noted earlier, in making its determination to award spousal support of $9,010 per month, the Master "considered the previous standard of living prior to the appointment of a conservator, the financial status and assets of the spouse, and the actual expenses incurred previous to the appointment and how those expenses were paid." Thus, our review of the trial court's discretionary decision is benefitted by knowing that the Master identified the most appropriate legal principles applicable to the decision. *See Lee Medical*, 312 S.W.3d at 524.

When reviewing a trial court's discretionary decision we must also determine whether the factual basis for the decision is properly supported by evidence in the record. *Id*. In this case, we are again benefitted by the Master's detailed findings of fact, which reveal that the Master engaged in a thorough review of the itemized request for support and identified with specificity expenses incurred prior to the creation of the conservatorship that were reasonable, necessary and recurring, and in keeping with the couple's standard of living.

As for expenses that were nonrecurring, exceptional or infrequent, the Master explained that such expenses could be addressed to the discretion of the conservator of the estate, for example when Mrs. King may need a new automobile or when significant repairs were needed, or when a capital improvement to the marital residence was necessary. It is also significant that all of the Master's findings of fact were adopted by the chancellor; therefore, the trial court's concurrent findings are conclusive as to those facts.[7] *See* Tenn. Code Ann. § 27-1-113; *see also In re Estate of Haskins*, 224 S.W.3d at 678.

The detailed findings by the Master confirm that she considered Mr. and Mrs. King's standard of living prior to the creation of the conservatorship and that she conducted a detailed examination of expenses Mrs. King incurred over a specified twelve-month period as well as Mrs. King's requested support. Moreover, the Master also

---

[7] However, our review of the trial court's conclusions of law is de novo, with no presumption of correctness. *In re Estate of Haskins*, 224 S.W.3d at 678.

considered Mrs. King's separate assets and income, which were significantly less than Mr. King's separate assets. The Master also noted that only Mr. King's assets and income were used for the parties' joint, personal, and household expenses.

The foregoing notwithstanding, Mrs. King contends the trial court erred by denying or deducting certain expenses she requested. For example, Mrs. King contends that she should have been awarded at least $633 per month for automobile expenses, which is consistent with her twelve-month average from her statement of expenses she filed with the court.[8] The court found as follows:

> [Mrs. King's statement expenses] list amounts for May, July and August that are 2-4 times higher than other months. Mrs. King had no explanation for the higher amounts. She testified that her car is a current model Lexus. The Court finds that those month's expenses are nonrecurring expenses and should be excluded. The remaining 9 month average is $163 per month. The Court finds that $163 per month is a reasonable and necessary amount to be awarded to Mrs. King for automobile gas and maintenance.

Mrs. King argues that the fact that the expenses were nonrecurring or unusual was not a valid reason to exclude those expenses because the expense of maintaining a vehicle is often unexpected. She also contends that her inability to remember the reasons for the abnormally higher months is also not a valid ground for denying her support for a legitimate expense, and that neither the bank nor Petitioners established that the expenses were improper or unjustified.

We are not persuaded by this argument for several reasons. First, it is significant that the Master found Mrs. King's automobile to be fairly new. The order also noted that the amount Mrs. King requested was based on the total of automobile-related expenses for a twelve-month period that included expenses for maintaining Mr. King's vehicle, which was no longer needed. Second, and more significantly, the trial court expressly stated that the purpose of monthly spousal support is to provide for usual and ordinary expenses, and the record reveals that the Master did so.

Also significant is the order from which this appeal lies does not preclude Mrs. King from petitioning the court for additional support to pay expenses incurred hereafter that exceed her monthly award of support. To the contrary, the order specifically authorizes Mrs. King to seek reimbursement for unusual or large charges from the conservator of the estate. The pertinent part of the order reads: "Any requests for proposed major capital expenditures regarding the residence should be submitted to

---

[8] Significantly, this amount would not include the cost of Mrs. King's car insurance premiums, as that amount is paid directly by Regions Bank.

Regions Bank. The Court remains available for determination of reasonable and necessary expenditures if Regions Bank determines it cannot make that decision."

Mrs. King next contends that she should have been awarded $409.73 per month for health and beauty aids. The trial court awarded Mrs. King $291 per month in health and beauty aids, finding as follows:

[Mrs. King's statement expenses] show the health and beauty aids July 2013 amount as $1,721. That amount is 2-8 times higher than other monthly amounts and there is no testimony to account for the wide variance. The Court finds that the amount of $1,721 should be excluded and the average of the remaining expenses for health and beauty aids is $291. The Court finds that the amount of $291 for health and beauty aids is a reasonable and necessary amount to be awarded.

Mrs. King contends that there is no evidence to refute her expenses for health and beauty aids, and she was not asked on direct or cross-examination to explain the wide variance. Nevertheless, the court's decision is supported by Mrs. King's expense statement and testimony, as well as the fact that the Master found the extra expenses constituted "outliers" in determining monthly averages of reasonable and necessary recurring expenses. *See Halliday v. Halliday*, No. M2011-01892-COA-R3-CV, 2012 WL 7170479, at *6 n.9 (Tenn. Ct. App. Dec. 6, 2012) (citing *Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *6 (Tenn. Ct. App. Jan. 28, 2010)) (courts may exclude "outliers" in determining averages for matters like expenses or income).

Next, Mrs. King argues that she should be allowed $4,482.76 per month for miscellaneous expenses of which $1,559 per month was designated by Mrs. King as miscellaneous household expenses, while the remaining $2,923.76 was designated as personal miscellaneous expenses and related to the attorney's fees she incurred during the trial court proceedings. The court awarded Mrs. King $1,168 per month for miscellaneous household expenses, including internet, church, the newspaper, and maintenance and repair costs, but excluded $3,408 for court reporter costs and additional amounts for gifting. The court also awarded Mrs. King $190 per month for personal miscellaneous expenses, but specifically excluded Mrs. King's attorney's fees and $4,472 for a new computer.

In regards to Mrs. King's request for additional amounts of support, excluding her request for attorney's fees, we find the challenges to the trial court's rulings constitute a challenge to the court's factual findings, not the court's legal conclusions. To the extent she challenges the factual findings, this must fail due to the concurrent findings rule, which makes the trial court's findings of fact conclusive on appeal. *See* Tenn. Code Ann. § 27-1-113; *see also In re Estate of Haskins*, 224 S.W.3d at 678. Therefore, we conclude that the factual basis for the decision is properly supported by evidence in the record. *Lee*

*Medical*, 312 S.W.3d at 524. To the extent some of the above findings are mixed questions of fact and law, decisions for which we review pursuant to the de novo standard of review, we find no error with the court's conclusions or findings on the above categories.

We now turn our attention to Mrs. King's claim for an additional $2,923.76 in monthly support for attorney's fees she incurred during the trial court proceedings, which she listed as "miscellaneous expenses." The trial court excluded these expenses from the award of spousal support, ruling as follows: "The Court finds that no monthly support should be paid for legal fees."

It is implicit from the Master's ruling that Mrs. King's legal fees did not fall within any of the factors the Master considered. For example, these legal expenses did not pertain to the Kings' "standard of living" prior to the appointment of a conservator, and did not qualify as "actual expenses incurred previous to the appointment of the conservator," which were factors the Master identified in the order which she considered in setting spousal support. Moreover, Mrs. King was not entitled to recover her attorney's fees pursuant to Tenn. Code Ann. § 34-1-114(a). *See Aldridge v. Aldridge*, No. W2006-02334-COA-R3-CV, 2007 WL 4170826, at *6 (Tenn. Ct. App. Nov. 27, 2007) (awarding a non-petitioner spouse attorney's fees under Tenn. Code Ann. § 34-3-109 would circumvent the legislative intent of Tenn. Code Ann. § 34-1-114, which provides for the payment of attorney's fees in conservatorship proceedings).

Tenn. Code Ann. § 34-1-114(a) restricts the payment of attorney's fees in a conservatorship proceeding as follows:

> If a fiduciary is appointed, the costs of the [conservatorship] proceedings, which are the court costs, the guardian ad litem fee, the required medical examination costs and the attorney's fee for the petitioner, shall be charged against the property of the respondent . . . . If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court . . . .

*Id*.

A fiduciary (conservator) was appointed for Mr. King, but Mrs. King was not the petitioner. Thus, she was not entitled to recover her attorney's fees pursuant to Tenn. Code Ann. § 34-1-114(a).

Being unaware of any authority that affords Mrs. King the right to recover the attorney's fees she incurred during the conservatorship proceedings, and agreeing that this expense did not come within the purview of the factors the trial court considered,

specifically the parties' standard of living or actual expenses incurred prior to the appointment of the conservator, we find no error with the decision to exclude Mrs. King's attorney's fees in determining the amount of monthly support she is entitled to receive pursuant to Tenn. Code Ann. § 34-3-109.

While we agree that Mrs. King is not entitled to have her attorney's fees included in determining the amount to award as spousal support pursuant to Tenn. Code Ann. § 34-3-109, our ruling should not be interpreted as precluding a spouse of a ward from seeking payment for attorney's fees under *any* circumstances while the conservatorship remains in effect. In fact, Regions Bank, the conservator of the estate for Mr. King, concedes this point in its brief, stating "to the extent Mrs. King seeks . . . legal fees unrelated to this conservatorship action, e.g., if Mrs. King were named as a defendant in a lawsuit, such as an automobile accident or a dispute with a home repair company, . . . Mrs. King could petition the court to assist in her fees related to any litigation outside of the conservatorship action."

Based on the foregoing, we find the trial court did not abuse its discretion in setting the amount of spousal support pursuant to Tenn. Code Ann. § 34-3-109. Therefore, we affirm the trial court in all respects.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with one-half of the costs of appeal assessed against Sheila G. King, and one-half of the costs of appeal assessed against Frank S. King, III, and M. Wesley Hall, III., jointly and severally.

_____
FRANK G. CLEMENT, JR., JUDGE